THE TRAVELERS' INSURANCE COMPANY, Plaintiff, *v.* MORRIS POMERANTZ and Others, Defendants.

Supreme Court, New York Special Term, December 23, 1924.

Insurance — life insurance — action for rescission of life insurance policy upon ground defendant made misrepresentations of fact in his application — defendant stated he was not deformed and neither had he had any " bodily or mental disease," nor had he " received medical or surgical attention within the past five years "— testimony adduced at trial insufficient to establish defendant had " bodily or mental disease "— fact that defendant exercised privilege of physician and patient does not warrant court in drawing unfavorable inference that if physicians had been permitted to testify disclosures would have been adverse to defendant — statement in application " nor have I received medical or surgical attention within the past five years * * * except as within stated " does not constitute material misrepresentation of fact sufficient to avoid policy — statement means defendant had not been treated nor had he consulted physician for mental or bodily disease or infirmity — rule as to significance of punctuation — judgment for defendant.

A judgment for the defendant upon the merits will be decreed in an action by the plaintiff insurance company for the rescission of a life insurance policy issued to the defendant on the ground that he made misrepresentations of fact in his application for such insurance, consisting of a statement that he was " not deformed " and neither had he had any " bodily or mental disease " nor had he " received medical or surgical attention within the past five years * * * except as herein stated," in the absence of evidence sufficient to establish that the defendant had suffered with a bodily or mental disease or that he had been treated by a physician for such ailments within the period designated in the policy.

The representation in the policy: " I am not deformed; I have had no bodily or mental disease " means a deformity or infirmity of a substantial character which apparently in some material degree impairs the physical condition and health of the applicant and increases the risk of that death or illness against which the insurance company was asked to issue its policy.

The fact that the defendant exercised his privilege of physician and patient and did not present evidence as to his physical or mental condition, does not warrant the court in drawing an unfavorable inference that if physicians had been permitted to testify, their disclosures would have been adverse to the defendant, particularly where there is a total absence of proof of disease or of the falsity of the representations made in the application.

Nor does the statement in the application " nor have I received medical or surgical attention within the past five years * * * except as herein stated " constitute a material misrepresentation of fact sufficient to avoid the policy, where a reasonable interpretation of the statement indicates that it means that the defendant had not been treated, nor had he consulted a physician for " bodily or mental disease " or infirmity within the period set out in the policy.

Moreover, the phrase containing the said representation must be read in connection with that which precedes it, being separated from the latter only by a comma, since, without regard to punctuation marks, the meaning of a writing will be determined from its language.

ACTION for the rescission of a life insurance policy upon the ground that the insured made misrepresentations of fact in his application.

*William J. Moran,* for the plaintiff.

*Stein & Salant [Louis Salant, Eli S. Wolbarst* and *Stanley B. Ecker* of counsel], for the defendants.

LEVY, J.:

Plaintiff seeks a rescission of the life insurance policy issued to the defendant Morris Pomerantz for the reason that the latter made certain misrepresentations of fact in his application for such insurance which were of a material nature. The policy, plaintiff asserts, was issued not only in consideration of the payment of the premium but upon the truth of the representations written into the application and that since the latter is part of the contract (Ins. Law, § 58) any statements therein contained, if untrue and material, are sufficient to warrant a rescission, thus vitiating the policy.

The representations are as follows: " I am not deformed; I have had no bodily or mental disease, nor have I received medical or surgical attention within the past five years  *  *  *  except as herein stated."

In support of its contention of the falsity of such representations, plaintiff produced at the trial certain medical testimony which it claimed fairly indicated that the defendant named had bodily or mental disease within the stated period, but that in any event, he had consulted physicians and received professional attention from them.

This defendant, however, urges strenuously that the testimony, even though given that inference which would be most favorable to the plaintiff, did not necessarily show that he had suffered any bodily or mental disease within the five-year period although the testimony might have shown that during this time he was treated by several physicians. His position is that it was not only necessary for the plaintiff to prove that he had bodily or mental disease but that he received medical or surgical attention within such five-year period for *such bodily or mental disease.* In other words, this defendant urges that the fact that he received medical attention within five years previous to the issuance of the policy was not a misrepresentation unless that medical attention was for some bodily or mental infirmity or disease. This view, plaintiff contends, is utterly without foundation and argues that no such interpretation could be placed upon the representations made and, even assuming that the defendant Morris Pomerantz had no bodily or mental

disease, so long as he received medical or surgical attention irrespective of the nature of the ailment, the representation was clearly false.

It thus becomes necessary in order to determine the sufficiency of the claim of the plaintiff to rescission, to construe and interpret these representations. I am satisfied from an examination of the evidence adduced at the trial before me that it was not established that the defendant had a bodily or mental disease as the same are defined by the authorities. (*Eastern District Piece Dye Works* v. *Travelers Ins. Co.*, 234 N. Y. 441.) There the court said in construing the meaning of the representation " I have never had any bodily or mental infirmity or deformity: " " It must be construed as meaning a deformity or an infirmity of a substantial character which apparently in some material degree impairs the physical condition and health of the applicant and increases the chance of that death or sickness against which the insurance company is asked to issue insurance, and which if known would have been liable to deter the insurance company from issuing the policy." (See, also, *Dilleber* v. *Home Life Ins. Co.*, 69 N. Y. 256; *Cushman* v. *U. S. Life Ins. Co.*, 70 id. 72; *Schmitt* v. *Michigan Mutual Life Ins. Co.*, 101 App. Div. 12; *Connecticut Life Ins. Co.* v. *Union Trust Co.*, 112 U. S. 250; *Smith* v. *Travelers Ins. Co.*, 76 Misc. 441.) Accepting this definition as a guide, and applying it to the situation in the instant case, I am unable to find in the record any proof whatsoever that the defendant Morris Pomerantz suffered with a bodily or mental disease. As matter of fact the record is made conspicuous by the absence of any such proof. But says plaintiff, true though this may be, we would have been able to prove that this defendant had a mental or bodily disease or infirmity, had not the privilege of physician and patient been claimed by him and that since the privilege was so urged this court should draw the inference that if the doctors had been permitted to testify the disclosures would have been adverse to said defendant. And as seeming authority for its view, plaintiff directs the attention of the court to the cases of *Deutschmann* v. *Third Ave. R. R. Co.* (87 App. Div. 503) and *New York Produce Exchange Bank* v. *Twelfth Ward Bank* (162 id. 13). In the former of these cases the plaintiff had put witnesses on the stand to establish her cause, but upon cross-examination testimony had been elicited which, when developed and followed up by other testimony showed pretty clearly that plaintiff had been afflicted and treated; in addition, defendant proved by other testimony which was not privileged that plaintiff had so suffered and been treated. Defendant then called a physician by whom it sought to prove the same fact further. As to this proffered

testimony, plaintiff raised the claim of privilege though she certainly did not present it as to other doctors whom she had called to testify. Plaintiff's counsel there requested the court to charge the jury that a refusal to waive the privilege did not warrant the jury in indulging in any inferences unfavorable to her or her cause of action. This the court declined to do and instead instructed the jury that the law did not prevent them from drawing any inference whatever from the situation. In the case before this court, however, no testimony was offered by the defendant. The door was not opened by way of the introduction of evidence as to the physical or mental condition of the defendant with whom we are concerned and then suddenly closed by claim of privilege. Here the privilege was claimed throughout and it was one which by statute the defendant had a right to assert. Furthermore, in the *Deutschmann* case there was evidence as to the disease of the plaintiff, but in the case at bar there was no evidence whatever in this connection; therefore, no inference should be permitted. An unrebutted *prima facie* case tending to establish mental or physical disease or infirmity plus the claim of privilege might admit of an inference, but not so when this is not present.

The *Produce Exchange* case lends no more force. There the privilege claimed was altogether of a different nature than that in this case. Whatever may be the rule in regard to privilege in other cases, in the relationship of patient and doctor, the privilege obtaining has assumed a certain sanctity and courts are reluctant to disturb it, no forceful reason appearing to the contrary. Under the circumstances I am unable to commit myself to the principle, particularly where, as here, there is a total absence of any proof of disease of the defendant, if any, that an unfavorable inference should or could be drawn merely because the privilege was claimed, to which under the statute he had a perfect and complete right. If the doctrine of the plaintiff were carried to its logical conclusion a party claiming privilege would be assured of no measure of protection under the very law authorizing it as this could immediately be destroyed by the possibility of an adverse inference. I find authority for my view in the scholarly treatise on Evidence of Prof. Wigmore, who says: " When the privilege is claimed by a patient who is also a party, *no inference* as to the facts suppressed can be drawn." (4 Wigm. Ev. [1905] § 2386, p. 3357.) Obviously this learned writer was keen to emphasize the words " no inference " as they are italicized by him. To similar effect, see *Wentworth* v. *Lloyd* (10 H. L. C. 589, 590). There it was held that there is no presumption of fact to be made against a party who enforces the rule against the disclosure, by his attorney, of knowledge professionally

acquired. Lord Chelmsford in concurring with the lord chancellor in this respect took occasion to say: " * * * with reference to excluding evidence, on the ground that the knowledge of the facts inquired into had been professionally obtained, said, the use which the Master of the Rolls made of the exercise of the plaintiff's right to prevent the disclosure of confidential communications seems to me so entirely at variance with principle, and so utterly in contradiction to the well known and invariably recognized privilege of professional confidence, that I cannot pass it by in silence; * * *. The law has so great a regard to the preservation of the secrecy of this relation, that even the party himself cannot be compelled to disclose his own statements made to his solicitor with reference to professional business. * * * The exclusion of such evidence is for the general interest of the community, and therefore to say that when a party refuses to permit professional confidence to be broken, everything must be taken most strongly against him, what is it but to deny him the protection which, for public purposes, the law affords him, and utterly to take away a privilege which can thus only be asserted to his prejudice.".

This precise reasoning may be very appropriately adopted in the case at bar. (See, also, *Bolton* v. *Corporation of Liverpool,* 1 Myl. & K. 88, 94, 95.) A well-considered case in point is *Penn. R. Co.* v. *Durkee* (147 Fed. 99), which was decided by the Circuit Court of Appeals for the Second Circuit embracing the New York district. There the court had occasion to construe the meaning of sections 834 and 836 of the Code of Civil Procedure which are identical with sections 352 and 354 of the Civil Practice Act. In that case defendant called a physician, a Dr. Peterson, who had treated the plaintiff and sought to prove by him the nature of the trouble for which he had treated her. The question of privilege was raised and sustained. The court below refused to charge that the jury could draw unfavorable inference and this was urged as a ground for reversal upon appeal. The Circuit Court of Appeals holding untenable the position of the appellant said: " To hold that, because the patient does not waive or abandon the prohibition, inferences adverse to his side of the controversy may be drawn by the jury, would be to fritter away the protection it was intended to afford." And so here, where plaintiff has failed to show *some* evidence of the falsity of the representations made in the application even if the cases cited by it were authority for its position, in these circumstances I find that I am not warranted in drawing any unfavorable inference as a result of the defendant's exercise of the right of privilege unequivocally granted him by statute.

We now come to the final question in this controversy, namely, does the statement in the application " nor have I received medical or surgical attention within the past five years   *   *   *   except as herein stated " constitute a material misrepresentation of fact sufficient to avoid the policy.   Here, also, plaintiff urges that though it might have failed to show evidence proving mental or bodily disease or infirmity in the defendant, the fact that within the five-year period he had consulted and been attended by a physician is sufficient to work rescission.   Defendant contends, however, that the representation just..quoted must be read in connection with that which precedes, it being separated from the latter by a comma only.   Let us see what it is: " I am not deformed; I have had no bodily or mental disease," which should be as the defendant urges read in with that which follows and thus paraphrased the entire statement would be: " I have had no bodily or mental disease, nor have I received medical or surgical attention within the past five years in relation to such bodily or mental disease."

In the first place, if any doubt exists as to the meaning of the language employed it should be resolved against the plaintiff insurance company who drew both the policy and the application. (*Dilleber* v. *Home Life Ins. Co.*, *supra*; *Bushey & Sons* v. *American Ins. Co.*, 237 N. Y. 24.)   It appears but reasonable to construe this statement from the standpoint of what was understood by the insured and proceeding from that premise the only logical, and it seems to me, the only proper interpretation to give it is as contended for by the defendant, namely, that he had not been treated nor had he consulted a physician for any mental or bodily disease or infirmity.   (See *Genung* v. *Metropolitan Life Ins. Co.*, 60 App. Div. 424; *Valentini* v. *Metropolitan Life Ins. Co.*, 106 id. 487; *Denaro* v. *Prudential Ins. Co.*, 154 id. 840; *Smith* v. *Travelers Ins. Co.*, 76 Misc. 441.)   In the last case the policy contained the following statement: " I have not been disabled nor have I received medical or surgical attention within the past five years."   Passing upon that the Appellate Term, through GUY, J., said: " As to warranty ' O,' ' I have not been disabled nor have I received medical or surgical attention within  the past five years,' this warranty must be construed in the light of the purpose for which it was made, viz., to convey to the assurer full knowledge of all *serious* disabilities from which the person applying for insurance has suffered during the previous five years.   Unless it is to be assumed that the business of health insurance is conducted solely for the profit of the insurance companies, without any corresponding possibility of benefit on the part of the assured, it cannot  be supposed

that the warranty had reference to any such temporary illness as the evidence shows the plaintiff suffered in the month of May previous to the issuing of the policy. Though in his application to the board of education, the plaintiff described it as a serious personal illness, that is but an expression of his opinion, not from a medical point of view, or the point of view of obtaining insurance, but as a compliance with certain established rules of the department of education regulating the pay of its employees. *There is no evidence that the disease was of a nature which seriously disabled him, or such as left any serious effects having a bearing upon the purpose and meaning of the policy.*" (Italics mine.)

As for the punctuation, a comma has been defined to be a point used to mark the smallest structural divisions of a sentence. (Webster Dict.) It has also been defined as a rhetorical punctuation mark indicating the slightest possible separation in ideas or construction. (Standard Dict.) It would seem, therefore, that it may be employed as much for the purpose of grammatical construction as in respect to the ideas sought to be conveyed. As to the latter, even if this punctuation were improper, it is no more allowable in vitiating the obligation involved, or in destroying the effect of the writing which assures it, than bad grammar. To permit this plaintiff insurance company to punctuate *in mitiori sensu* of its own words would indeed be something of a real novelty. Punctuation may aid in ascertaining the true reading of a document, but it may still be read and interpreted without such aid. (*White* v. *Smith,* 33 Penn. St. 186.) It is by no means an arbitrary standard, which is to control the meaning and construction of a sentence in opposition to the actual meaning of the writing. In a document which contains punctuation marks, the words, and not the punctuation, are the controlling guide in its construction. (*Lambert* v. *People,* 76 N. Y. 220.) Punctuation is no part of the English language. It is always subordinate to the text, and is never allowed of itself to control the meaning of such text. The court will take the writing by its four corners, and determine its meaning from its language, and, having ascertained from the arrangement of its words what its meaning is, will construe it accordingly, without regard to the punctuation marks. (*Ewing* v. *Burnet,* 11 Pet. [36 U. S.] 41, 54.) The sense of a writing is gathered from its words and their relation to each other, and after that has been done, punctuation may be used more readily to point out the division in the sentences and parts of sentences. But the words control the punctuation marks, and not the punctuation marks the words. (*Holmes* v. *Phenix Ins. Co.,* 98 Fed. 240.) Punctuation in writings, therefore, may sometimes shed light upon the meaning

of the parties, but it must never be allowed to overturn what seems the plain meaning of the whole document. (*Osborn* v. *Farwell*, 87 Ill. 89.)

I am, therefore, constrained to the conclusion that the representation can be interpreted in no other way than that heretofore expressed, and since plaintiff has failed to prove that the defendant Morris Pomerantz suffered from a bodily or mental disease or infirmity or that he was treated by a physician in that connection, rescission cannot be decreed and judgment must be for the defendants upon the merits.

Submit findings and decree.