THE TRAVELERS INSURANCE COMPANY, Appellant, *v.* MORRIS POMERANTZ and Others, Respondents.

First Department, December 3, 1926.

Insurance — life insurance — action by insurer to rescind contract on ground of materially false representations — alleged misrepresentation related to answer to question as to whether insured had any deformity, or any bodily or mental disease or had received medical or surgical attention within five years — said question relates to serious ailments or sicknesses — evidence shows that insured had been attended at irregular intervals for slight illnesses — no unfavorable inference in refusal of defendant to waive privilege and permit his physician to testify — plaintiff could have used its examining physician and also physician who examined for another policy — inference from failure to call said physicians is that insured was in good health at time of said examinations — no proof that statement was materially false — acceptance by insurer of second yearly premium after commencement of action to rescind, constituted reaffirmation of contract and waiver of right to rescind.

This action is brought by the plaintiff insurance company to rescind a policy of life insurance on the ground that the insured had made materially false representations in his application for insurance. The representation, which it

is claimed was false, reads as follows: " I am not deformed.  I have had no bodily or mental disease, nor have I received medical or surgical attention within the past five years — except as herein stated."  The purpose of the question in the application is to determine whether or not the insured has suffered any severe illness, either mental or physical, within the last five years, and the failure to specify slight and passing illnesses during the time stated, does not constitute a materially false representation.

Since the evidence shows merely that the insured had been attended by a physician twelve times at irregular intervals during five years preceding the application, and that on no occasion had he been seriously ill, there is no proof that the representation made by the insured was materially false.

No unfavorable inference can be drawn from the fact that the insured refused to waive his privilege and permit his physician to testify as to the illnesses for which they treated him.

Moreover, the plaintiff could have produced its physician, who made the examination at the time the policy was taken out, and could have produced the examining physician of another life insurance company, who examined the insured a year before the present policy was taken out, and in view of the fact that they could have produced those physicians, it must be inferred that when the policies were issued, the insured was in good health.

Furthermore, the plaintiff accepted the second yearly premium on the policy after the present action was commenced, and since this premium was accepted by the plaintiff's general agent, it constituted a reaffirmation of the contract and a waiver of the plaintiff's right to rescind it.

CLARKE, P. J., and MERRELL, J., dissent.

APPEAL by the plaintiff, The Travelers Insurance Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 9th day of January, 1925, upon the decision of the court rendered after a trial at the New York Special Term.

The action was brought in equity to rescind a policy of life insurance because of misrepresentations of the insured in his application for insurance.  The court dismissed the complaint upon the merits. ·

*William J. Moran* of counsel, for the appellant.

*Louis Salant* of counsel [*Stanley B. Ecker* with him on the brief; *Stein & Salant,* attorneys], for the respondent.

McAvoy, J.  The suit was brought for a rescission of a policy of life insurance issued to the defendant Morris Pomerantz, the other defendants being the beneficiaries thereunder.  The complaint is in equity and asserts that in order to procure the issuance of the policy the insured made material misrepresentations in his application for insurance.  The representation which it is claimed was false was No. 12 and reads:

" 12. I am not deformed.  I have had no bodily or mental disease, nor have I received medical or surgical attention within the past five years — except as herein stated: "

There was no answer at this application number and the space for remark was left blank and no exceptions were noted to the general declaration, and it is deemed therefrom that the applicant represented this declaration as a true statement of fact with respect to his previous condition of health or deformity and with respect to whether he had had medical or surgical attention within five years. It was not shown in the trial that the applicant was deformed, but it is asserted that he falsely represented that he had no bodily or mental disease and that he had not received medical or surgical attention within five years prior to signing the application on May 1, 1922.

The plaintiff's argument is that there are three separate declarations in this item No. 12 in the application:

1. That applicant was not deformed;

2. That applicant had no disease, and ·

3. That applicant received no medical or surgical attention within the past five years.

We do not agree with plaintiff that the language of the application can be so construed. The meaning thereof as it would be understood by the ordinary mind is that the applicant had not been treated by nor had he consulted a physician for any mental or bodily disease within five years prior to the date of the application. The implication from the conjunction of these statements, not separated as is the request for information as to deformity, is· that the company was seeking information, not as to temporary disorders nor slight functional disturbances which did not impair the general · health nor threaten the life of the applicant, but as to ailments and illnesses of severity or gravity and having some bearing upon the physical welfare of the applicant at the time his declaration was made or which were likely to affect him in the near future; that is, it was requiring a declaration as to an impairment of the constitution and functions of the applicant which would be classed in the common mind as a disease. This would exclude infrequent and slight attacks of illness, and include only those grave, important and serious conditions that affect the system and tend to shorten life.

The evidence upon the trial showed that during a period of five years prior to the date of the application, the insured had been visited by physicians ten or twelve times without continuity and at varying periods. Between the first and second visits three months elapsed; two and a half years in all before the next visit; then four and a half months; then about a year; then there were visits at intervals of a month, over three weeks; again three weeks; then

four weeks and finally eight days. The last visit was six months before the policy was issued on May 10, 1922.

The doctors testified that defendant was " sick " or " ailing " and on no occasion was he sick enough to be in bed. There was no evidence as to just what ailments or illnesses the defendant suffered from at that period or for what he was treated. The testimony concerning prescriptions given to the defendant by the doctors whom he visited indicate that the medicines that he received were such as are usually prescribed for a cold or for a disturbed stomach digestion, or sleeping powders because he had not slept well on two occasions.

The testimony of the several physicians who had attended applicant on these twelve visits during the five years prior to the application, was excluded because of the privileged character of the communications had between the physicians and the patient, and thus the exact ailment from which defendant suffered is not made plain. While the insurance company does not urge directly that we should draw an unfavorable inference from this claim of privilege which excluded the nature of the disease, yet there is a note in the argument which would give the impression that we can regard the excluding of this evidence by defendant as a basis upon which to conclude that something unfavorable to him would be disclosed if the testimony were permitted by waiving the privilege. Such a view loses sight of the fact that proof of material misrepresentations avoiding a contract must be made by the parties asserting them. The defendant is under no duty to waive a statutory privilege for the purpose of assisting the plaintiff in abandoning its contract if proof cannot be made, except through the acquiescence of the defendant that his previous condition of disease warrants an avoidance of the policy. The plaintiff must be left in the same situation as other suitors who cannot make proof of their causes because of statutory protection from disclosure of certain kinds of testimony, such as communications between husband and wife in divorce suits, where direct confessions of adultery while still cohabiting are excluded; communications between attorney and client, where confessions of guilt of a crime are shut out; communications between confessors and penitents in religion for the purpose of giving religious consolation, where statements of guilt are excluded; communications between a claimant and a person since deceased where the claimant asserts a right to property of the decedent against his executors or administrators or others deriving their interest from the decedent, where direct proof of a gift or a transfer of the property or a contract to pay money for services is often excluded, both at law and in equity, although the proof upon which

a claimant may establish his claim could only be made through such communications. These matters all lie in the policy of the State which considers their exclusion of more benefit to the general body of its ·inhabitants than would be the particular gain of individuals.

Moreover, there was proof which plaintiff could have made of the physical condition of the applicant, which it either neglected or avoided making. The defendant advised the plaintiff at the time of the application for his policy that the year previous he had taken out a policy in the New York Life Insurance Company for $5,000. It also appeared that before the policy was issued the defendant was physically examined by a physician of the plaintiff. Neither of these physicians was called as a witness at the trial nor was anything proven which accounted for their absence. From this fact it may be inferred that when these policies were issued, both that of the plaintiff and that of the New York Life Insurance Company, the examining physicians found the applicant in good health. This testimony could not have been excluded had it been offered as privileged communications between the patient and the physicians, and would have disclosed any real bodily infirmity, such as is described, as a mental or bodily disease if it existed.

There was nothing, therefore, upon which to found a ruling that the defendant suffered from or was treated for any serious complaint, ailment, illness or disease within the five years prior to the issuance of the policy within the meaning of the language employed in the application.

We think, too, that the acceptance by the general agent of the plaintiff company of the second year's premium on this policy and the giving of a receipt therefor, although two months thereafter an attempt was made to return this premium from the main office of the company, constituted an estoppel of the plaintiff company from now rescinding the policy. At the time this premium was accepted the plaintiff had already issued a summons on which was indorsed: "Action to rescind policy No. 808,120 *for material misrepresentations.*" Thus, although there was an attempt at rescission upon a discovery of the alleged fraud or misrepresentation, there was not an adherence by plaintiff to that position. After an attempt at rescission of the contract, with knowledge of the misrepresentation, if a benefit is accepted under it, the original contract is reaffirmed and the party electing to rescind has waived the right. An insurance company may not claim a right to rescind and also take a policyholder's premium payment after it has elected to rescind the policy, without the implication that it is abandoning the claim of rescission. Of course, a mere payment to a solicitor

or collecting agent would not bind the company, but this money was turned in to a general agent who kept the same for over two months, and it was not until it had reached the main office that it was returned. The general agent's act bound the company, and he was required to return the premium if rescission was to be insisted upon.

Such was the finding of the learned trial judge and no exception was taken to this finding in the formal exceptions of plaintiff to the trial court's rulings on the facts. We think the judgment should be affirmed, with costs.

DOWLING and BURR, JJ., concur; CLARKE, P. J., and MERRELL, J., dissent.

Judgment affirmed, with costs.