**LOWE'S OF ROANOKE, INC., and Metropolitan Life Insurance Company, Plaintiffs,**

**v.**

**JEFFERSON STANDARD LIFE INSURANCE COMPANY, Defendant.**

**LOWE'S STAUNTON HARDWARE, INC., and Lowe's of Oak Hill, Inc., Plaintiffs,**

**v.**

**NATIONAL LIFE INSURANCE COMPANY, Defendant.**

**LOWE'S KNOXVILLE HARDWARE, INC., and Metropolitan Life Insurance Company, Plaintiffs,**

**v.**

**PILOT LIFE INSURANCE COMPANY, Defendant.**

**LOWE'S NORTH WILKESBORO HARDWARE, INC., Lowe's of Bristol, Inc., and Lowe's Hardware of Richmond, Inc., Plaintiffs,**

**v.**

**LIBERTY LIFE INSURANCE COMPANY, Defendant.**

**LOWE'S NORTH WILKESBORO HARDWARE, INC., and Metropolitan Life Insurance Company, Plaintiffs,**

**v.**

**The CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**LOWE'S NORTH WILKESBORO HARDWARE, INC., Plaintiff,**

**v.**

**The CANADA LIFE ASSURANCE COMPANY, Defendant.**

**LOWE'S NORTH WILKESBORO HARDWARE, INC., Plaintiff,**

**v.**

**FIDELITY MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**LOWE'S NORTH WILKESBORO HARDWARE, INC., Plaintiff,**

**v.**

**The NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Defendant.**

United States District Court
S. D. New York.

June 25, 1963.

See also 203 F.Supp. 427.

Jordan, Wright, Henson & Nichols, by Perry C. Henson, Greensboro, N. C., for plaintiff.

Wharton, Ivey & Wharton, Greensboro, N. C., for Pilot Life Ins. Co., Liberty Life Ins. Co., Canada Life Assur. Co., Fidelity Mut. Life Ins. Co. and Northwestern Mut. Life Ins. Co.

McNeill Smith, Greensboro, N. C., for Jefferson Standard Life Ins. Co.

Ozmer L. Henry, Lumberton, N. C., for Connecticut Mut. Life Ins. Co.

Lord, Day & Lord, New York City, for defendant.

EDELSTEIN, District Judge.

The defendant insurance companies have moved for an order pursuant to Rule 37(a), Fed.R.Civ.P., to compel a witness to answer certain questions propounded upon his oral deposition. The above-entitled actions are brought by corporate beneficiaries to recover the face amounts of life insurance policies issued on the life on one Henry Carl Buchan, Jr., who died on October 22, 1960. The defendants have denied recovery under the policies on the ground that the insured made misrepresentations of material facts in the several insurance applications and, in addition, concealed material facts from the companies.[1] The alleged material misrepresentations and concealments pertained to the health, previous illnesses, and physical condition of the insured as well as information concerning consultations with and treatment by physicians within a stated period prior to the application.

The defendants, in an attempt to establish their defenses, took the deposition of Dr. Julius Schwimmer upon oral examination pursuant to Rule 30, Fed. R.Civ.P. Present at the deposition, in addition to counsel for the plaintiff and defendants was counsel for the witness. Dr. Schwimmer testified that he was called to attend Henry Carl Buchan, Jr., at the Hotel Pierre in New York City on two occasions, once in 1959 and again in 1960. The witness further stated that the calls were made after midnight and on each occasion Buchan paid Dr. Schwimmer $25.00 for the visits. The doctor thereupon refused to answer questions concerning the nature of Buchan's illness, the treatment given, or the medicines prescribed on the ground that such questions called for privileged information. See Fed.R.Civ.P. 26(b).[2] The witness invoked the physician-patient privilege as to certain questions and invoked the Fifth Amendment privilege against self-incrimination as to certain others. In addition, there was objection to two questions on the ground of relevancy. The questions and the objections thereto have been set out in the appendix and have been numbered to facilitate their discussion *seriatim*.[3]

Under New York's statutory enactment of the common law physician-patient privilege, a physician is not "allowed" to disclose any information acquired in attending a patient in a professional capacity if such information was necessary to enable him to act in that

1. These actions are pending in the United States District Court for the Middle District of North Carolina, Wilkesboro & Greensboro Divisions. The deposition of the witness was taken in this district.

2. "Depositions Pending Action
 * * * * * *
 "(b) Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party * * *."

3. See Questions No. 1–17 in the appendix attached.

capacity. N.Y.Civ.Prac.Act § 352.[4] The privilege belongs to the patient and may be claimed or waived by him. Travelers' Ins. Co. v. Pomerantz, 124 Misc. 250, 207 N.Y.S. 81, aff'd 218 App.Div. 431, 218 N.Y.S. 490 (1st Dept. 1926), rev'd on other grounds, 246 N.Y. 63, 158 N.E. 21, 23 (1927). Where the patient is dead, however, § 354 of the Civil Practice Act permits the personal representative of the decedent's estate to waive the prohibition against disclosure of professional information.[5] The personal representative, upon a waiver of the prohibition, may permit the divulgence of information imparted by the decedent to the doctor which was "necessary" to the physician's diagnosis and prescription. See Matter of Caddington's Will, 307 N. Y. 181, 120 N.E.2d 777 (1954); Steinberg v. New York Life Ins. Co., 263 N.Y.

45, 48–49, 188 N.E. 152, 90 A.L.R. 642 (1933); Edington v. Aetna Life Ins. Co., 77 N.Y. 564, 569–570 (1879); Murray v. Physical Culture Hotel, Inc., 258 App. Div. 334, 16 N.Y.S.2d 978 (Sup.Ct.1939). But even if the prohibition is waived by the personal representative, a physician may not disclose "confidential communications and such facts as would tend to disgrace the memory of the patient * * *." N.Y.Civ.Prac.Act, § 354; Eder v. Cashin, 281 App.Div. 456, 120 N.Y.S. 2d 165 (3rd Dept. 1953).

The statute, N.Y.Civ.Prac. Act, § 354, requires the proscription against the disclosure of professional information to be "expressly waived" and further requires that the waiver "must be made in open court, on the trial of the action or proceeding * * *" N.Y.Civ.Prac.Act, § 354. The New York courts have held

---

4. "§ 352. Physicians, dentists and nurses not to disclose professional information.

"A person duly authorized to practice physic or surgery, or dentistry, or a professional or registered nurse, shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity; unless, in cases where the disclosure of the information so acquired by a dentist is necessary for identification purposes, in which case the dentist may be required to testify solely with respect thereto, or unless, where the patient is a child under the age of sixteen, the information so acquired indicates that the patient has been the victim or subject of a crime, in which case the physician, dentist or nurses may be required to testify fully in relation thereto upon any examination, trial or other proceeding in which the commission of such crime is a subject of inquiry."

5. "§ 354. Application of sections relating to confidential communications.

"The last four sections apply to any examination of a person as a witness unless the provisions thereof are expressly waived upon the trial or examination by the person confessing, the patient or the client. But a physician, or surgeon or a registered professional or licensed practical nurse, upon the trial or examination, may disclose any information as to the mental or physical condition of a patient who is deceased, which he ac-

quired in attending such patient professionally, except such confidential communications as would tend to disgrace the memory of the patient and such facts as would tend to disgrace his memory, when the provisions of section three hundred and fifty-two have been expressly waived on such trial or examination by the personal representatives of the deceased patient, or in any litigation wherein the interests of the personal representative of such deceased patient are deemed by the trial judge to be adverse to those of the estate of the deceased patient, by any party in interest, or if the validity of the last will and testament of such deceased patient is in question, by the executor or executors named in said will, or the surviving husband, widow or any heir-at-law or any of the next of kin, of such deceased, or any other party in interest. * * * But such attorney or his employees, upon a trial or examination, shall not be permitted to disclose any confidential communications which would tend to disgrace the memory of the decedent. In a judicial action or proceeding the waivers herein provided for must be made in open court, on the trial of the action or proceeding, and a paper executed by a party prior to the trial providing for such waiver shall be insufficient as such a. waiver. But the attorneys for the respective parties, prior to the trial of the judicial action or proceeding, may stipulate for such waiver, and the same shall be sufficient therefor."

that an examination before trial, or deposition, is a "proceeding" to which the express waiver provision applies. Lorde v. Guardian Life Ins. Co. of America, 252 App.Div. 646, 300 N.Y.S. 721 (1st Dept. 1937); Kriebel v. Commercial Travelers Mut. Acc. Ass'n of America, 63 N.Y.S.2d 282 (Sup.Ct.1946).

The decedent's personal representative, assuming one has been appointed, did not appear at the deposition of Dr. Schwimmer, and since the plaintiffs, as beneficiaries under the policy had no standing to waive the decedent's privilege, Saad v. New York Life Ins. Co., 201 App.Div. 544, 194 N.Y.S. 445, 447 (1st Dept. 1922), "there [was] no one in court who [could] waive the restriction placed upon the giving of testimony by a physician under section [352] * * *." Saad v. New York Life Ins. Co., supra, 194 N.Y.S. at 447. Counsel for the plaintiff-beneficiaries in these proceedings apparently recognized the limitation on waiver by a beneficiary and stated explicitly that they had "no authority" either to waive the privilege or claim it. Although it is clear that Buchan's personal representative has not made the express waiver as required by statute, the defendants nevertheless contend "that the law in New York is well settled that an attending physician may not claim privilege under New York law and unless the privilege is claimed by the plaintiffs in this litigation, the personal representative of Henry Carl Buchan, Jr., deceased, not being a party and not before the court, the defendants are entitled to have the court enter an order directing the witness, Dr. Julius Schwimmer, to answer the questions propounded to him, hereinbefore listed."[6]

In support of their contention that the witness must be compelled to answer, the defendants have sought assistance from Roth v. Equitable Life Assur. Soc., 186 Misc. 403, 59 N.Y.S.2d 707, aff'd, 270 App.Div. 923, 62 N.Y.S.2d 612 (1st Dept. 1946). The theme of defendants' argument is less than clear, but defendants, by relying on Roth, contend that "absent a claim of privilege by plaintiffs in this action" the physician must respond since he cannot claim "privilege" on his patient's behalf. See Fleet Messenger Service, Inc. v. Life Ins. Co. of North America, 205 F.Supp. 585 (S.D.N.Y. 1962), aff'd 315 F.2d 593 (2d Cir.1963); Klein v. Union Ins. Co., 3 C.C.H.Life Cas. 2d 242 (E.D.N.Y.1957); Siebern v. Mutual Life Ins. Co. of New York, 269 App. Div. 942, 57 N.Y.S.2d 847 (2d Dept.1945), affirming 269 App.Div. 846, 55 N.Y.S.2d 603 (2d Dept.1945).

In Roth v. Equitable Life Assur. Soc. the court held that the plaintiff, in the affirmative sense of waiver, could not waive the privilege since he was not the insured's personal representative, but the court went on to observe that the privilege was not self-operative:

"[T]he established attitude of the law toward the privilege *is that it is not automatic or absolute in the absence of waiver, or to be insisted upon at the initiative and compulsion of the court, but rather that the testimony will be admitted in the absence of objection.* * * * The objection may come from any party to the litigation whether or not the personal representative of the insured, and upon objection being made, in the absence of waiver, the court is obliged to exclude the testimony." (Emphasis supplied.)

In Klein, a case somewhat analogous to the facts of the instant motion, Judge Cashin of this court refused to permit a physician-witness to refuse to answer questions on his deposition on the ground of privilege in the absence of objection by the plaintiff-beneficiary. Relying on the Roth case and the Siebern case Judge Cashin stated that "before a physician can be justified in his refusal to answer, it must be established that the prohibition contained in Sections 352 and 354 is self-operative and thus applicable even in the absence of objection. Such does not, however, appear to be the law of New

---

6. Defendants' moving papers, p. 10.

York." Klein v. Union Central Life Ins. Co., supra. The *ratio decidendi* in Klein was that by permitting the physician witness to refuse to answer questions in the absence of objection by the plaintiff-beneficiary, Section 149(4) of the New York Insurance Law [7] would be rendered meaningless since the plaintiff, by having the objection come in by means of a non-party witness would avoid the § 149(4)'s statutory presumption and at the same time obtain the benefit of the privilege.

A similar line of reasoning, in part relying on § 149(4) of the New York Insurance Law, was followed by Judge Levet of this court in Fleet Messenger Service, Inc. v. Life Ins. Co. of North America, supra. In Fleet Messenger, also an action by a beneficiary to recover the proceeds of a life insurance policy, an attorney representing the widow and the personal representatives, none of whom were parties to the action, appeared before Judge Levet at a pre-trial conference and sought to invoke the "physician-patient privilege" to exclude certain testimony by physicians of the deceased insured. Judge Levet, in a pre-trial order, pursuant to Rule 16, Fed.R. Civ.P., relied on Roth v. Equitable Life Assur. Soc., supra, and the Klein case, supra, and held that the widow and the personal representatives were not parties to the action and thus in the absence of legislation the court was not "disposed to extend the right to invoke the privilege to a non-party." Fleet Messenger Service, Inc. v. Life Ins. Co. of North America, 205 F.Supp. 585, 588 (S.D.N.Y.1962). The problem of requiring the physician to disclose the content of professional information obtained from the decedent has

immured the court in a dilemma, for to compel such disclosure appears to flaunt the clear statutory language prohibiting such testimony unless the statutory interdiction is "expressly waived" by the personal representative in open court upon a trial or an examination. N.Y.Civ.Prac. Act, § 354. Although the case law supports the proposition that in the absence of an objection by a party to the suit the physician must divulge information otherwise deemed confidential, the court has been concerned with solving the puzzle of how to square the statute's explicit and unequivocal prohibition against disclosure in the absence of waiver with the decisions compelling disclosure in the absence of objection by a party. Perhaps an analysis along the lines suggested below may serve to sever the Gordian knot and may help to resolve what appears to be an irresolute inconsistency between the statute and the case law.

It is manifest from the statute's plain mandate that a waiver by the personal representative in open court is required in order to "allow" the physician to testify concerning confidential communications. However, when no such waiver has been made an objection by a party to the physician's testimony is an objection that, in effect, protests the divulgence of confidential communications in the absence of compliance with the waiver provision of § 354. Thus, when a party objects to the physician's testimony concerning communications with the decedent the party is in effect saying: "That unless the personal representative complies with the statute's waiver provisions, thereby indicating that the representative no longer seeks the pro-

**7.** Section 149(4) of the New York Insurance Law provides:

" * * * If in any action to rescind any such contract or to recover thereon, any such misrepresentation is proved by the insurer, and the insured or any other person having or claiming a right under such contract shall prevent full disclosure and proof of the nature of such medical impairment, such misrepresentation shall be presumed to have been material."

The purpose of this section is to avoid impaling defendant-insurers on the horns

of a difficult evidentiary dilemma:—foreclosing them, by reason of the assertion of the privilege, from establishing facts essential to their defense and at the same time requiring them to prove such facts to support a judgment in their favor. Section 149, in effect, relieves the insurer from the burden of establishing the materiality of a misrepresentation when the facts essential to the establishment of the misrepresentation are shrouded through an invocation of the privilege.

scriptive protection of § 352, the testimony of the physician is rendered incompetent by § 352 and must be excluded." But by not interposing objections as is the case here, the parties, in effect, are stating that they have no objection to the disclosure of information which, had objection been made, would be rendered inadmissible by virtue of the representative's failure to waive the restriction against the disclosure of professional information. And the prohibition not being automatic, the court's exclusion, *sua sponte*, is unwarranted. Utilization of this analysis with relation to the Fleet Messenger case, the Klein case and the Roth case, will, it is hoped, underscore the sound basis upon which those decisions are bottomed.

Returning now to Judge Levet's decision, it was grounded also on the premise that permitting a non-party witness to conceal information by attempting to invoke the patient's privilege would be abhorrent to the policy of promoting the disclosure of truth. The opinion, quoting from Professor Wigmore stated that: "It is certain that the practical employment of the privilege has come to mean little but the suppression of useful truth —truth which ought to be disclosed and would never be suppressed for the sake of any inherent repugnancy in the medical facts involved * * *. In all of these [actions on policies of life insurance where the deceased's misrepresentations of his health are at issue] the medical testimony is absolutely needed for the purpose of learning the truth. In none of them is there any reason for the party to conceal the facts, except as a tactical maneuver in litigation * * *. In none of these cases need there be any fear that the absence of the privilege will subjectively hinder people from consulting physicians freely. The actually injured person would still seek medical aid, the honest insured would still submit to medical examination, and the testator would still summon physicians to his cure." 8 Wigmore, Evidence, § 2380(a) at p. 831 (McNaughton ed. 1961).

The disapproval of the privilege in the Fleet Messenger case is but a single expression of a considerable body of opinion which holds that the privilege serves only to obstruct justice by preventing the physician from disclosing the truth. See Chafee, Privileged Communications: Is Justice Served or Obstructed by Closing the Doctor's Mouth on the Witness Stand? 52 Yale L.J. 607 (1943); Long, Physician-Patient Privilege Statutes Obstruct Justice, 25 Ins. Counsel J. 224 (1958); Note, 6 St. John's L.Rev. 91 (1931); Note, Discovery and the Physician-Patient Privilege, 34 NW U.L.Rev. 384 (1952); Note, The Physician-Patient Privilege, 58 W.Va.L.Rev. 76, (1955). These commentators point out that the reasons that were advanced to justify the enactment of the rule were never valid and have no more validity today. The rationale underlying New York's enactment of the statutory privilege was to encourage consultations between the physician and patient and to preserve the confidentiality of communications. Commissioners on Revision of the Statutes of New York, 3 N.Y.Rev.Stat. 737 (1836); Edington v. Aetna Life Ins. Co., supra, 77 N.Y. at 569–570; 8 Wigmore, supra at 828. But as Wigmore points out "[i]n only a few instances, out of the thousands occurring, is the fact communicated to a physician confidential in any real sense * * *. [T]here is hardly a fact in the categories of medicine in which the patient himself attempts to preserve any real secrecy * * *. Even where the disclosure to the physician is actually confidential, it would nonetheless be made though no privilege existed. People would not be deterred from seeking medical help because of the possibility of disclosure in court. If they would, how did they fare in the generations before the privilege came?" 8 Wigmore, supra at 829.

It is clear that to permit the witness, Dr. Schwimmer, to remain silent by taking advantage of the absence of waiver, notwithstanding the fact that no objection has been interposed by a party, might result in the very injustice which

is deprecated by the commentators. Dr. Schwimmer has already disclosed by previous answers that prior to Buchan's death he was consulted by Buchan in New York. Unless Dr. Schwimmer is ordered to testify further in the circumstances herein concerning the nature of Buchan's health at the time of the consultations, the defendant insurers may be prevented from supporting their defense that a material misrepresentation was made by the decedent. Dr. Schwimmer is outside the subpoena jurisdiction of the North Carolina District Court. See Fed.R. Civ.P. 45(e) (1) [8] and the instant examination appears to be the only opportunity available to the defendants to obtain the truth concerning certain of Buchan's statements on the applications for insurance.

 The force of the authority of the Roth case, supra, the Fleet Messenger case, supra, and the Klein case is not diluted by the fact that § 149(4) of the Insurance Law is not involved in this case as the plenary litigation is pending in the North Carolina District Court. Consequently, in the absence of an objection by the plaintiffs and notwithstanding the absence of a waiver by the personal representative, the court is constrained to follow the theory of the Roth case and its progeny that the prohibition against disclosure of professional information "is not automatic or absolute in the absence of waiver, or to be insisted upon at the initiative and compulsion of the court * * *." Dr. Schwimmer is hereby ordered to answer questions 1, 2, 3, 5, 6, 7, 8, 9 and 10. Questions 11 and 12 should also be answered. The relevancy objection raised as to those questions is overruled. It is no objection to the questions that the answers may be inadmissible at trial. The questions should be answered if they appear to be reasonably calculated to lead to the discovery of admissible evidence. See Fed. R.Civ.P. 26(b).

 The court's order in no way intends to prejudice or deprive the plaintiffs, or defendant or the deceased's personal representative, if he becomes a party to the action, from objecting to the admissibility of the deposition in whole or in part at the trial of the action in the North Carolina District Court. But the liberal discovery policy of encouraging full disclosure to prevent surprise and as an "effective means of detecting and exposing false, fraudulent, and sham claims and defenses" 4 Moore, Federal Practice ¶ 26.02[2] at 1035 (3d ed. 1962) requires that the Doctor's knowledge concerning Buchan's physical condition and health be disclosed.[9]

8. Fed.R.Civ.P., 45(e) (1) provides:
"At the request of any party subpoenas for attendance at a hearing or trial shall be issued by the clerk of the district court for the district in which the hearing or trial is held. A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the district, or at any place without the district that is within 100 miles of the place of the hearing or trial specified in the subpoena; and, when a statute of the United States provides therefor, the court upon proper application and cause shown may authorize the service of a subpoena at any other place."

9. The order compelling the physician to answer the questions originally propounded does not deprive the physician or the decedent's personal representative of any objections that may have been asserted had the deposition taken place in North Carolina and had this determination depended upon North Carolina law. North Carolina's statutory enactment of the physician-patient privilege embodies a more liberal attitude toward encouraging disclosure than New York's statute. The North Carolina statute, N.C.Gen.Stat. § 8–53 (1953) provides:
"No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon; Provided, that the presiding judge of a superior court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice."
Under the statute, upon a finding by the trial court that the testimony of the physician or surgeon is "necessary" the

Questions 14, 15 and 16 were objected to on the grounds that the witness' Fifth Amendment privilege against self-incrimination "might" be violated by responsive answers. It is well established that "[t]he privilege is not * * * dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it. The privilege protects a mere witness as fully as it does one who is a party defendant." McCarthy v. Arndstein, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924); 8 Wigmore, supra at 326; McCormick, Evidence § 123 (1954); Maguire, Evidence of Guilt 17 (1959). And in determining whether the invocation of the privilege is made in good faith the Supreme Court has held that "[t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Hoffman v. United States, 341 U.S. 479, 486–487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); Emspak v. United States, 349 U.S. 190, 198, n. 18, 75 S.Ct. 687, 99 L.Ed. 997 (1955). The nature of the subject matter precludes greater certainty or the establishment of more finite guidelines and it is acknowledged that the judge, in appraising the claim, must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence. Hoffman v. United States, supra, 341 U.S. at 487, 71 S.Ct. at 818; Emspak v. United States, supra, 349 U.S. at 198, 75 S.Ct. at 692. The privilege may be claimed where there is a reasonable likelihood to apprehend danger from a direct answer, Hoffman v. United States, supra, 341 U.S. at 486–487, 71 S.Ct. at 818–819; Mason v. United States, 244 U.S. 362, 365, 37 S.Ct. 621, 61 L.Ed. 1198 (1917), or where the answer would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. Hoffman v. United States, supra, 341 U.S. at 486–487, 71 S.Ct. at 818–819; Blau v. United States, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (1950); In the Matter of Mutual Security Savings & Loan Ass'n, Inc., 214 F.Supp. 877, 881 (D.Md.1963). The court must be mindful of not requiring the witness to prove what hazards he foresees as a result of disclosure, for to do so would be to require the surrender of the protection which the privilege is designed to guarantee. Hoffman v. United States, supra, 341 U.S. at 486, 71 S.Ct. at 818. The court further realizes that privilege against self-incrimination must be "accorded liberal construction in favor of

evidence given by the physician or surgeon may be admitted. See Metropolitan Life Ins. Co. v. Boddie, 194 N.C. 199, 139 S.E. 228 (1927); State v. Martin, 182 N.C. 846, 109 S.E. 74 (1922). The North Carolina courts have fallen into step with the ranks of commentators who have criticized the operation of physician-patient statutes as unjust and unfair. The most recent expression on this problem is found in Sims v. Charlotte Liberty Mut. Ins. Co., 257 N.C. 32, 125 S.E.2d 326 (1962) in which the court quotes the identical critical language of Professor Wigmore that is contained in the opinion in Fleet Messenger Service, Inc. v. Life Ins. Co. of North America, supra. In the Sims case the North Carolina Supreme Court concludes its extensive criticism of the privilege by a clear enunciation of its unfavorable attitude toward the privilege: "Our Legislature intended the statute to be a shield and not a sword. It was careful to make provision to avoid injustice and suppression of truth by putting it in the power of the trial judge to compel disclosure. Judges should not hesitate to require the disclosure where it appears to them to be necessary in order that the truth be known and justice be done." Sims v. Charlotte Liberty Mut. Ins. Co., supra, 125 S.E.2d at 331. Thus, it would appear that this court is in conformity with the clearly established attitude of the forum where the issue of the admissibility of confidential communications made to the physician will ultimately be in issue. See Massachusetts Mut. Life Ins. Co. v. Brei, 311 F.2d 463 (2d Cir. 1962). (Physician-patient privilege a matter of substance under Erie principle to be determined in a diversity case pursuant to state law.)

the right it was intended to secure." Ibid., see Counselman v. Hitchcock, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); Bouschor v. United States, (8th Cir. 1963), 316 F.2d 451.

The court, after considering the implications of questions 14, 15 and 16 "in the setting in which they are asked" holds that it is not unreasonable to conclude that responsive answers conceivably could be used as the first step to a federal criminal prosecution. The claim of self-incrimination is sustained and the objections to questions 14, 15 and 16 are sustained.[10]

As to question 17, the objection is overruled. The question may be answered Yes or No. The fact that a responsive answer to the question may draw upon hearsay statements is not a valid objection. The fact that the answer may not be admissible at the trial is not a valid ground for objection "if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b).

The objections to questions numbered 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 17 are overruled and the witness is hereby ordered to answer those questions. The objections to questions 14, 15 and 16 are sustained. So ordered.

## APPENDIX

1. Q. Did this charge include anything other than your own services?

MISS CLARK: I am going to direct the witness not to answer that question.

MR. SMITH: Would you state the grounds?

MISS CLARK: That's privileged.

2. Q. When you got to the room, would you tell us what Mr. Henry Carl Buchan, Jr., looked like to you?

MISS CLARK: I am going to object to that on the ground that this is privileged, and direct the witness not to answer it.

MR. SMITH: Miss Clark, you appear here as an attorney. Do you represent the estate of Henry Carl Buchan, Jr.?

MISS CLARK: No; I do not.

MR. SMITH: Only the witness?

MISS CLARK: Only the witness.

MR. SMITH: You do not represent the widow?

MISS CLARK: I represent only Dr. Schwimmer.

MR. SMITH: None of the parties in this case?

MISS CLARK: Only the witness.

MR. SMITH: Dr. Schwimmer is not a party in this case.

MISS CLARK: Only a witness.

BY MR. SMITH:

3. Q. When you got to the Hotel Pierre and spent an hour with Mr. Henry Carl Buchan, Jr., on these two occasions, will you tell us what you did?

MISS CLARK: I object and direct the witness not to answer on the grounds of privilege.

4. Q. Dr. Schwimmer, upon your arrival at the Hotel Pierre on these occasions when you were called to see Henry Carl Buchan, Jr., did Henry Carl Buchan, Jr., consult with you in your professional capacity as a doctor?

A. Please repeat that question.

MR. SMITH: Read it to him.

---

10. See 21 U.S.C.A. §§ 173, 174, 26 U.S.C.A. §§ 4701, 4702, as amended 74 Stat. 58 (Supp.1962), § 4724. The court need not decide the thorny, and still beclouded question of whether the witness would be entitled under the Fifth Amendment to refuse to answer the questions if the answers would incriminate him only under state law. Compare United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210 (1931) with Ullman v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956); Ballman v. Fagin, 200 U.S. 186, 26 S.Ct. 212, 50 L.Ed. 433 (1906), and United States v. Saline Bank, 1 Pet. (26 U.S.) 100, 7 L.Ed. 69 (1828). See United States v. Cardillo, 316 F.2d 606 (2d Cir. 1963).

(Whereupon the pending question was read by the reporter)

A. Yes.

5. Q. What did he state to you about pain?

MISS CLARK: I object and direct the witness not to answer.

6. Q. What did he state to you about any symptoms?

MISS CLARK: Same objection.

7. Q. Did you administer to him any narcotics?

MISS CLARK: Same objection.

8. Q. Did you administer to him any other medicine?

MISS CLARK: Same objection.

9. Q. Did you make any physical examination of Henry Carl Buchan, Jr., on either or both of these occasions?

MISS CLARK: Same objection.

10. Q. Did you, on either of these occasions, refer him to Dr. J. E. Buckley?

MISS CLARK: I will object to it. That is irrelevant. * * *

11. Q. Did you discuss with Dr. Buckley this patient, Henry Carl Buchan, Jr.?

MISS CLARK: I am going to direct the witness not to answer.

MR. WHARTON: On what grounds?

MR. SMITH: On what grounds?

MISS CLARK: That is irrelevant to the purpose for which you are examining him.
* * * * * *

12. Q. Have you ever discussed with Dr. Buckley the patient Henry Carl Buchan, Jr.?

MISS CLARK: I will have to object to that and direct the witness not to answer, as to a discussion with Dr. Buckley. Dr. Buckley is dead.

13. Q. * * * Have you discussed with anyone the fact that you visited Henry Carl Buchan, Jr. at the Hotel Pierre?

A. I can't answer that.

MR. WHARTON: Is it that he does not know, or is it that he is claiming some sort of—

Q. I notice you consulted with your attorney, Dr. Schwimmer. Is this because you do not know that you discussed it can mean that you visited Henry Carl Buchan, Jr., that is, discussed it prior to today? Is that the reason why you say that you cannot answer?

A. This to me is privileged information, as you call it. It's of a professional nature. And I don't think that I'm permitted to divulge this.

14. Q. Do you make it a practice to keep a record of the narcotics administered by you?

MISS CLARK: I am going to direct the witness not to answer that.

15. Q. You understand, Doctor, I am asking about you general practice?

MISS CLARK: I am directing the witness not to answer it.

MR. SMITH: On what ground?

MISS CLARK: Well, it could be self-incriminating.

MR. SMITH: You are pleading the Fifth Amendment?

MISS CLARK: Yes, the Fifth Amendment.

BY MR. SMITH:

16. Q. Doctor, do you think that an answer to that question would tend to incriminate you?

A. It might.

17. Q. Doctor, have you heard that Henry Carl Buchan, Jr. did consult any other doctors besides yourself?

MR. CAFFREY: I believe I will object to that. He answered that question.