WACHOVIA BANK & TRUST COMPANY, EXECUTOR OF THE ESTATE OF H. C. BUCHAN, JR., DECEASED, AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF H. C. BUCHAN, JR., DECEASED v. MARY ELIZABETH BUCHAN, A MINOR; J. H. WHICKER, SR., GUARDIAN AD LITEM FOR THE POSSIBLE UNBORN ISSUE OF MARY ELIZABETH BUCHAN; J. H. WHICKER, JR., GUARDIAN AD LITEM FOR THE HEIRS OF H. C. BUCHAN, JR., DECEASED, AND RUTH LOWE BUCHAN, AND T. E. STORY, GUARDIAN AD LITEM FOR MARY ELIZABETH BUCHAN, A MINOR.

(Filed 8 April, 1964.)

**Infants § 1; Compromise and Settlement—**

Where a note owned by the estate is payable solely out of the proceeds of insurance on testator's life, and there is a real controversy whether insurers are liable on the policies, a court of equity has jurisdiction to approve for minor beneficiaries of the estate a compromise payment by insurers.

APPEALS by defendants, other than Ruth Lowe Buchan, from *Gambill, J.,* in Chambers in WILKES on 27 December 1963.

This is an action to obtain the advice and instructions of the Court with respect to the settlement of a claim in which a minor and contingent, unknown parties are interested.

The factual situation with respect to which plaintiff seeks advice and instructions is stated in the complaint as follows:

H. C. Buchan, Jr. died testate on 22 October 1960. (A summary of his will appears in *Trust Company v. Buchan,* 256 N.C. 142, 123 S.E. 2d 489.) The will named Wachovia Bank & Trust Company (hereafter Wachovia) as executor and trustee for the two trusts set up by the will. It qualified and is now acting as authorized in the will. Testator was survived by his wife Ruth and his daughter Mary Elizabeth, primary beneficiaries of the two testamentary trusts. The daughter was fourteen years of age in September 1963. Wachovia was appointed and qualified as guardian for the minor.

Part of the assets of the Buchan Estate received by the executor were stock certificates in 16 hardware stores. These corporations bore the name Lowe's, followed by the name of the city in which the corporation had its place of business, for example, Lowe's North Wilkesboro Hardware, Inc., Lowe's Knoxville Hardware, Inc. Mr. Buchan owned 89% of the capital stock of these 16 corporations.

Shortly prior to his death, Mr. Buchan, acting for the hardware stores, applied to insurance companies for contracts of insurance on his life payable on his death to a named Lowe's hardware store. The premium was payable by the designated beneficiary. The insurance applied for totalled $2,100,000.

The insurance companies, when called upon to pay, denied liability. One denied it had issued the policy. One alleged it had written, placed the policy in the mail, but the policy was not delivered until after the death of the named insured. All asserted the applications on which they were requested to issue the policies contained false representations with respect to assured's health, doctors consulted, and hospital treatment received. All asserted the representations were material and, because false, entitled them to refund the premiums paid and void the contracts. The several beneficiaries named in the policies brought suits in the U. S. District Courts and in the Superior Courts of North Carolina to enforce the asserted contracts of insurance.

The hardware companies had, prior to Mr. Buchan's death, created a profit sharing trust under the name of "Lowe's Hardwares Employees' Profit Sharing Plan and Trust," (hereafter Trust.) After Wachovia qualified as executor, Trust asserted it had a verbal option to purchase at Buchan's death all of his stock in the 16 corporations, and had an unsigned writing prepared by Buchan containing the formula by which the price to be paid for the stock would be determined. This formula prescribed two methods, one based on book value, the other on earnings. The maximum value of the stock based on the formula was $4,831,064.23. No value was assigned to the controverted insurance claims in arriving at this figure.

Trust organized a corporation under the name of Lowe's Companies, Inc. for the purpose of acquiring all of the stock of all of the hardware companies. It notified Wachovia, as executor, of its election to purchase. Wachovia denied its testator had given an option. After negotiations between Wachovia and Trust, Wachovia agreed, subject to court approval, to a sale by which it would receive in cash $4,253,-908.88; a note, the personal obligation of maker, for $989,281.14; and a note for $700,000 payable solely from collections from the insurance companies.

Wilkes Superior Court, on 20 May 1961, in an action entitled, *"Wachovia Bank & Trust Company, Executor of the Estate of H. C. Buchan, Deceased, and Trustee under the Last Will and Testament of H. C. Buchan, Jr. v. L. G. Herring, Trustee for Lowe's Hardwares Employees' Profit Sharing Plan and Trust et al."*, authorized the sale on the terms proposed. The purchaser paid the $4,253,908.88 as agreed. It executed a note for $989,281.14. This note was paid before maturity. Wachovia was given 50,000 shares of Lowe's Companies, Inc. It promptly, as authorized by the Superior Court, exchanged these shares for that company's note for $700,000. The note, dated 21 June 1961, recites:

"This note is given pursuant to paragraph 2(c) of the letter from Womble, Carlyle, Sandridge & Rice quoted in Finding of Fact (21) in the judgment dated May 20, 1961, signed by the Honorable F. Donald Phillips in the case of *WACHOVIA BANK & TRUST COMPANY, EXECUTOR OF THE ESTATE OF H. C. BUCHAN, DECEASED, AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF H. C. BUCHAN, JR. v. L. G. HERRING, TRUSTEE FOR LOWE'S HARDWARES EMPLOYEES' PROFIT SHARING PLAN AND TRUST*, et al. This note is payable only out of the net proceeds of insurance policies on the life of H. C. Buchan, Jr., in the total face amount of $2,100,000, which policies were payable to and owned by some of the companies listed in paragraph 1 of said letter. All of said policies have been or are now in suit in the various courts, state and federal, in North Carolina.

"The undersigned agrees to apply all of the net proceeds from said policies to the payment of this note if and when said proceeds are collected except that in the case of policies owned and payable to Lowe's of Winston-Salem, Inc., and Lowe's of Raleigh, Inc. (in which said two companies the undersigned owns half of their capital stock), the undersigned agrees to apply only half of the net proceeds collected by said two companies.

"This note shall bear no interest except that if interest is collected from any insurance company separate and distinct from the insurance coverage itself, such part of the interest so collected applicable to the net recovery will be paid on this note.

"If the net proceeds from insurance collected are insufficient to pay this note in full, the holder of this note agrees, after all reasonable efforts have been exhausted to collect said insurance, to accept the net proceeds actually collected in satisfaction of this note and surrender it."

Shortly after the note was given, two of the insurance companies settled their liabality by paying $321,918. This amount was applied as a credit on the $700,000 note, leaving a balance owing of $378,081.66.

After this settlement, the remaining companies having a potential liability of $1,600,000, initiated discovery proceedings. They took depositions of doctors and other medical experts who had treated or prescribed for Mr. Buchan in 1959 and 1960. Six medical experts testified to treatment and consultations during 1959 and 1960. Many of these consultations were in New York and Baltimore. Several were in August and September 1960. These consultations and treatments were not disclosed in the applications for insurance. After the insurance companies had taken the depositions of these medical experts, and the nature and extent of the treatments were disclosed, counsel for the insured negotiated with counsel for the insurance companies in an effort to settle all of the various suits. An agreement was finally reached by which the insurance companies offered to pay in full settlement of all of their obligations the sum of $554,953.29. This amount included expenses and premiums paid by the plaintiffs, plus attorneys' fees, leaving a balance of $450,000 for distribution between Wachovia, payee and holder of the $700,000 note, and the beneficiaries named in the policies of insurance. Counsel representing plaintiffs in the suits against the insurance companies recommended acceptance of the offer. Maker of the $700,000 note conditionally rejected the offer. It offered to accept the proposed settlement on condition that Wachovia accept $225,000 in settlement of the balance then owing on the $700,000 note.

Wachovia, after consultation with its counsel, agreed to the conditions stated by the maker provided the Superior Court of Wilkes County, after appropriate investigation, approved the proposed settlement.

Ruth Lowe Buchan answered. She did not deny any of the allegations of the petition. She prayed that the court enter such order as it thought just, equitable, and proper.

Plaintiff requested the court to appoint guardians ad litem to represent Mary Elizabeth Buchan, the heirs at law of H. C. Buchan, Jr., and the unborn issue of Mary Elizabeth Buchan. T. E. Story was appointed as guardian ad litem for the minor. J. H. Whicker, Sr. was appointed as guardian ad litem for the unborn issue of Mary Elizabeth Buchan, J. H. Whicker, Jr. was appointed as guardian ad litem for the contingent heirs of H. C. Buchan, Jr. The several guardians ad litem filed answers. They admitted the facts alleged in the complaint, but averred counsel for plaintiffs in the suit against the insurance companies were unduly pessimistic with respect to their ability to recover. They prayed that the court carefully examine all of the facts and, af-

ter such examination, make such order as the court deemed for the best interest of the persons they represented.

A jury trial was waived. The court found facts and entered a judgment authorizing and directing Wachovia to accept the offer of settlement as modified by the plaintiffs in the suits against the insurance companies. The guardians ad litem excepted and appealed.

*Jordan, Wright, Henson & Nichols, William D. Caffrey, and McElwee & Hall for plaintiff appellee.*

*Whicker & Whicker and T. E. Story for appellants.*

PER CURIAM. The amount collected on the $700,000 note has a material bearing on the value of the testamentary trust set up for the minor, Mary Elizabeth Buchan. This fact is sufficient to justify Wachovia in asking the Superior Court to advise and direct it with respect to the proposed compromise. *Trust Company v. Buchan,* 256 N.C. 142, 123 S.E. 2d 489.

Appellants did not except to any of the court's findings. Its findings are stated in more detail than our summary. The exception to the judgment presents the sole question: Do the facts found support the court's legal conclusion and its judgment authorizing settlement on the terms outlined? The answer is yes.

Counsel for plaintiffs in the suits against the insurance companies did not, as appellants suggest, over emphasize the difficulty confronting them. *Sims v. Insurance Company,* 257 N.C. 32, 125 S.E. 2d 326; *Rhinehardt v. Insurance Company,* 254 N.C. 671, 119 S.E. 2d 614. Even so, those named as beneficiaries in the contracts of insurance had the legal right to press the litigation until the courts finally determined the rights of the parties.

Maker of the note preferred to take its chances rather than accept the relatively small sum it would receive if Wachovia insisted on payment in full. Bad faith is not suggested. There is no evidence on which such a finding could be made. Wachovia concluded that it would be better to make some adjustment rather than to risk all in litigation. It concluded the best interest of the Buchan Estate would be served by accepting the offers on which the litigation could be disposed of. The Superior Court, after careful consideration, approved Wachovia's conclusion. We find nothing justifying a reversal. Hence the judgment is:

Affirmed.