THOMPSON APEX COMPANY v. MURRAY TIRE SERVICE, INC.

No. 6910SC137

(Filed 30 April 1969)

**1. Evidence § 29— records made in the course of business — admissibility — proper foundation**

Tire rubber manufacturer's quality control test reports, although ordinarily admissible as an exception to the hearsay rule as records kept in the regular course of business, *are held* erroneously admitted without proper foundation where there is no evidence as to who made the tests or whether the tests were made by an authorized person, and where the evidence is insufficient to show how the tests were made.

**2. Evidence § 3— facts within common knowledge — manufacturer's quality control testing**

It is a matter of common knowledge that the greater majority of manufacturing plants today employ quality control tests as a part of their regular daily manufacturing process.

**3. Evidence § 3— facts within common knowledge — manufacturer's test laboratory**

The court will assume that a tire rubber manufacturer, as most other large manufacturers, employs several people in its quality control laboratory, that each works independently of the other in compiling records of tests made and in making the various tests, and that it is extremely

doubtful that any single witness would have personal knowledge of the entire contents of the test records.

APPEAL from *Hobgood, J.,* 19 August 1968 Regular Civil Session, Superior Court of WAKE.

Plaintiff, on 29 June 1966, instituted action to obtain judgment against defendant for a past due account in the amount of $10,079.84. Defendant answered admitting the unpaid contract price to be $10,079.84 but denying owing any portion thereof to plaintiff. In its further answer and counterclaim defendant averred that over a number of years it had built up a profitable tire retreading business and had acquired an excellent reputation as a retreader; that plaintiff knew that any retread rubber purchased by defendant would be used by defendant in retreading the tires of its customers; that plaintiff's agent for a period of several months repeatedly called on defendant for the purpose of obtaining defendant's business and warranted that all retread rubber furnished by plaintiff to defendant would be of excellent quality and in all respects suitable for use in retreading tires; that defendant, relying on said warranties and representations, ceased purchasing rubber from other suppliers and began to purchase from plaintiff; that thereafter defendant experienced unusually high incidence of return of tires retreaded by it for the reason that the retreads had come off the tires; that at least half the retread rubber furnished by defendant was defective and not fit for use in retreading tires "in that the cushion gum, an integral part of the retread rubber, was defective in such a way that, after a tire retreaded with rubber furnished by the plaintiff had been driven a relatively short distance, the cushion gum separated from the rest of the retread rubber and adhered to the carcass of the tire, with the result that the tread then separated itself from the carcass of the tire and came off"; that defendant had incurred certain expense (set out with particularity) in re-retreading customers' tires and had suffered damage by reason of the loss of customers and damage to its reputation as a retreader of tires. Plaintiff by reply essentially denied all these averments. The parties stipulated that the correct balance was $10,079.84, and the jury answered the issue as to whether the cushion gum sold by plaintiff to defendant was defective as alleged in the counterclaim in favor of plaintiff. Judgment was entered in favor of plaintiff against defendant in the amount of $10,079.84 with interest and defendant appealed.

*Jordan, Morris and Hoke by John R. Jordan, Jr., and Eugene Hafer for plaintiff appellee.*

*John V. Hunter, III, for defendant appellant.*

MORRIS, J.

All of defendant's assignments of error are addressed to the admission of certain evidence over objection.

[1]    William J. Scichilone, Sales Manager of the Tread Rubber Division of Thompson Apex, testified for the plaintiff. He testified that rubber shipped by plaintiff to defendant had been tested, that records of the tests were kept as a part of the business records of the company at the home office, that upon request the records of tests were sent to him as general sales manager, that the records of the tests made on the rubber shipped to defendant were examined by him, that the tests were made in the company laboratory and the lab report made there, that the laboratory is a part of the plant and in the same building, that reports are always made of tests and always become a part of the records, that he has access to those records. Witness identified the reports attached to sales data on rubber shipped to defendant and Plaintiff's Exhibits G-1 through G-17 were, over objection, introduced into evidence.

Defendant bases its objection to the introduction of the test results on its contention that these tests had not been made by the witness, nor under his supervision, and that he actually spent very little time in the laboratory. Defendant contends that the court committed prejudicial error in admitting into evidence these tests results without a foundation having been laid that the tests were reliable, conducted by competent personnel and adequate equipment, and promptly and accurately recorded.

[2, 3]    It is conceded that the tests in question were quality control tests. We think it is a matter of common knowledge that the great majority of manufacturing plants today employ quality control tests as a part of their regular daily manufacturing process. Nor do we think it amiss that we assume that plaintiff, as most other large manufacturers, employs several people in its quality control laboratory and that each works independently of the other in compiling records of tests made and in making the various tests. It is extremely doubtful that any single witness would ever have personal knowledge of the entire contents of these test records. Obviously strict application of the hearsay rule would render them inadmissible.

We think an analogous situation is presented in *Sims v. Insurance Co.*, 257 N.C. 32, 125 S.E. 2d 326. The question presented there was the admissibility of hospital records. Defendant had denied liability on an insurance policy on the ground that the application for the policy contained false statements with respect to in-

sured's health. The application contained representations that appli-
cant was in good health, had never had heart trouble, kidney trouble,
diabetes, alcoholism, etc. Defendant attempted to introduce hospital
records showing, during the two years prior to the application, ad-
missions to the hospital for varying lengths of time for chronic al-
coholism, portal cirrhosis, and valvular heart disease, among other
things. Plaintiff objected to the admission of the records and they
were allowed for the purpose only of showing when applicant was in
the hospital. On appeal plaintiff insisted that the records were inad-
missible for two reasons: (1) they were hearsay and (2) were priv-
ileged communications. The Supreme Court upheld their exclusion
as privileged communications because there was no finding by the
trial court that, in its opinion, their admission was necessary to a
proper administration of justice. However, Justice Moore, writing
for the Court, discussing the first ground of objection, said:

> "Hospital records, when offered as primary evidence, are hear-
> say. However, we think they come within one of the well recog-
> nized exceptions to the hearsay rule — entries made in the reg-
> ular course of business. Modern business and professional ac-
> tivities have become so complex, involving so many persons,
> each performing a different function, that an accurate daily
> record of each transaction is required in order to avoid utter
> confusion. An inaccurate and false record would be worse than
> no record at all. Ordinarily, therefore, *records made in the usual
> course of business, made contemporaneously with the occurrences,
> acts, and events recorded by one authorized to make them and
> before litigation has arisen, are admitted upon proper identifi-
> cation and authentication.* (citing cases)." (Emphasis supplied.)

The Court went on to say that where hospital records are legally
admissible, proper foundation must, of course, be laid for their in-
troduction. A qualified witness must testify "to the identity and
authenticity of the record and the mode of its preparation, and show
that the entries were made at or near to the time of the act, condi-
tion or event recorded, that they were made by persons having
knowledge of the data set forth, and that they were made *ante
litem motam.*"

In *Nelson v. Union Wire Rope Corporation,* 39 Ill. App. 2d 73, 187
N.E. 2d 425, one of the issues involved was whether certain cable
was defective. Quality control tests relating to the heats of steel
from one or more of which the wire for the cable in question was
manufactured were admitted into evidence over objection. The chief
chemist for the company testified that the record recorded the

chemical analysis of each heat of steel; that these analyses were made of every heat of steel by 24 chemists under his direction and were recorded from tests of the various heats made while the steel was molten; that the handwriting of the records was not his but that of competent chemists who made the tests under direction of the witness; that the accuracy of the chemists' work was checked by him in the laboratory periodically; that the records were kept in the regular course of business under his supervision; that he examined and checked over each of the heats of steel concerned; that the records had been under his jurisdiction and kept in his department since the time they were made. The Appellate Court of Illinois said as to these records: "They are the records of a third person, and are admissible under the long-recognized common law rule relating to records kept in the regular course of business — an exception to the hearsay rule, recognized as such because this type of evidence arises from a circumstance offering every inducement to the accurate recording of information and none to its falsification." *Nelson v. Union Wire Rope Corporation, supra.*

**[1]** We think that quality control tests such as were offered in the instant case are properly admissible as records kept in the regular course of business. While we do not think that the foundation laid for their introduction into evidence in *Nelson v. Union Wire Rope Corporation, supra,* represents the minimum requirements, we are of the opinion that the foundation laid by plaintiff here falls short of the requirements laid down by the North Carolina Supreme Court. There is no evidence as to who made the tests nor whether they were made by a person authorized to make them. This type of test is vitally important in the business of manufacturing rubber, and there should be some evidence that the tests were made by a person having knowledge of the data they contain. The record is also silent as to how the records were made except that "A sample is taken on each and every 400 pound batch of material that our company manufactures. Then when the sample is matched with the sheet and each one of the sheets, by a sheet that is approximately ten pounds to 15 pounds, somewhere in there, then after the lab okays it — the lab comes down and okays that sheet that is tagged, then it goes into a smaller mixer and through a series of mills, etc., then it is extruded; the material then checked on the hour, then approximately every ten — approximately ten batches are checked at random. By that I mean we don't know which batch but just for a recheck again every ten batches are checked at random." This is the only evidence as to how or by whom the tests were made in the foundation laid by plaintiff. We do not deem it sufficient.

This was a hard fought, unusually well tried lawsuit which consumed a week in its trial. Both plaintiff and defendant were ably represented. Nevertheless, we cannot speculate that the jury would not have reached a different conclusion had the tests been excluded. Since it appears to us that the tests were improperly admitted, there must be a new trial.

We have examined plaintiff's other assignments of error and find them to be without merit. Since these questions are not likely to arise upon another trial, we do not deem it necessary to discuss them.

New trial.

CAMPBELL and PARKER, JJ., concur.