METROPOLITAN LIFE INSURANCE COMPANY v. RUTH BODDIE AND
G. C. COLLINS, ADMINISTRATOR OF THE ESTATE OF CARLTON H. BODDIE.

(Filed 14 September, 1927.)

Physicians and Surgeons—Confidential Relations—Insurance, Life—Evi-
dence—Application for Policy—Misrepresentations—Statutes—Find-
ing of Court—Appeal and Error.

Before a physician may testify to matters arising in his confidential
relationship with his patient, our statute requires that the trial judge
find that in his opinion such testimony is "necessary to a proper adminis-
tration of justice," and in the absence of such finding appearing of record
on appeal, it is reversible error for the trial judge upon defendant's
exception to admit testimony of the insured's physician tending to show
that the insured in his application for life insurance had made misstate-
ments of material facts that would avoid the insurer's liability in his
suit to cancel the policy issued thereon.

APPEAL by defendants from Nunn, J., and a jury, at February Term,
1927, of NASH. New trial.

This action was commenced by the plaintiff against the defendants to
compel the cancellation of Metropolitan Life Insurance Company
Policy No. 3644819, on the life of Carlton H. Boddie, for that the
statements and representations, as contained in the application, were
untrue, material and fraudulent. The defendants, widow and adminis-

trator of the deceased, deny the material allegations of the complaint and deny that the deceased made any false representations to the knowledge of the defendants, and allege that if any misrepresentations appeared in the policy, that they were immaterial and not fraudulent.

*Winston & Brassfield for plaintiff.*
*Austin & Davenport and D. W. Perry for defendants.*

CLARKSON, J.  Dr. J. A. Winstead was introduced as a witness for the plaintiff and stated that he knew Carlton H. Boddie, defendant G. C. Collins' intestate, and was his family physician since 1919.  The defendants objected.  The objection was overruled; exception and assignment of error were duly made.  The testimony of Dr. Winstead was offered for the purpose of showing that the statements and representations as contained in the application for the policy in plaintiff's company were untrue.  The application was dated 29 May, 1923.  The policy was issued 2 June, 1923.

C. S., 1798, is as follows: "Communications between physician and patient.  No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may acquire in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: *Provided,* that the presiding judge of a Superior Court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice."

In *Fuller v. Knights of Pythias,* 129 N. C., p. 318, it is held that a person in his application for insurance may waive the right to object to the evidence of a physician acquired while attending him and the physician may be compelled to testify.

In the application now under consideration there was no waiver clause as in the *Fuller* case.

In *Smith v. Lumber Co.,* 147 N. C., 62, the testimony of the physician did not come within the purview or scope of the statute.

In *S. v. Martin,* 182 N. C., p. 846, the defendant, Martin, was indicted for procuring the miscarriage or abortion of Rosa Yow, a pregnant woman.  Dr. Mimms attended her, and his testimony related to a conversation implicating the defendant.  The privilege is for the *benefit of the patient alone*—Rosa Yow, not defendant Martin.  In the *Martin* case the Court said, at p. 850: "If the privilege is for the benefit of the patient alone, how can the defendant invoke its aid?  Even if it be contended that the privilege was available to him on the ground that some of the communications were made in his presence,

that Rosa became a party to the crime by consenting to the abortion, that she is living, and the physician's testimony would tend not only to convict him, but to discredit her, and that the evidence objected to was for these reasons incompetent, a complete answer is found in the proviso of the statute and *in his Honor's statement that in his discretion he not only permitted, but required Dr. Mimms to testify when called as a witness for the State. His Honor no doubt did so because in his opinion the testimony of Dr. Mimms was necessary to a proper administration of justice."* (Italics ours.)

In *Myers v. State* (Indiana), 24 A. L. R., p. 1196, the annotations cite numerous cases where the privilege does not exist as to family matters or affairs incidentally learned by physicians while professionally attending patients.

The serious question presented was the exception and assignment of error of defendants sufficient to permit defendants in this Court to take advantage of the proviso of the statute, or was it waived? We hold that the exception was sufficient, the matter was not waived and the assignment of error should be sustained. Jones' Commentaries on Evidence (The Blue Book of Evidence), sec. 761.

At common law no privilege existed as to the confidential relations between physician and patient. Wigmore on Evidence, vol. 5, 2 ed., sec. 2380. In its wisdom the General Assembly of this State has seen fit to pass the statute above quoted. We think that in construing same it was incumbent on the presiding judge to find the fact, and this should appear in the record in substance, that in his opinion, the disclosure is necessary to a proper administration of justice. Under the statute, the evidence is incompetent unless in his opinion the same was necessary to a proper administration of justice. The disclosures of a physician as to what takes place between him and his patient has from time immemorial been held by the medical profession as inviolate.

Principles of Medical Ethics adopted by The American Medical Association, at the annual session in New Orleans, May, 1903, among the Duties of Physicians to Their Patients, are the following:

"Sec. 2. Every patient committed to the charge of a physician should be treated with attention and humanity, and reasonable indulgence should be granted to the caprices of the sick. Secrecy and delicacy should be strictly observed; and the familiar and confidential intercourse to which physicians are admitted, in their professional visits, should be guarded with the most scrupulous fidelity and honor.

Sec. 3. The obligation of secrecy extends beyond the period of professional services; none of the privacies of individual or domestic life, no infirmity or disposition, or flaw of character observed during medical

attendance should ever be divulged by physicians, except when imperatively required by the laws of the State. The force of the obligation of secrecy is so great that physicians have been protected in its observance by courts of justice."

A physician should not be subpœnaed to court and compelled to make disclosures and open the door to the confidential relationship unless required to do so in the manner provided by the statute. We think this is fair to the physician and a right interpretation of the statute. This finding of record should be afforded the physician to protect him from criticism, and no doubt loss of prestige and practice, if his patient objects to his testifying.

As to the other assignments of error made by defendants, they are unnecessary to be considered, as the case goes back for a new trial.

New trial.