125 S.E.2d 326 (1962)
256 N.C. 32
Juanita SIMS, by her Next Friend, Ruth Mae Sims,
v.
CHARLOTTE LIBERTY MUTUAL INSURANCE COMPANY.
No. 379.
Supreme Court of North Carolina.
May 2, 1962.
*328 Hoyle C. Ripple, Winston-Salem, for plaintiff.
Womble, Carlyle, Sandridge & Rice and Wesley Bailey, Winston-Salem, for defendant.
MOORE, Justice.
The trial court excluded the contents of the hospital records without assigning any reason for the ruling. Consequently if they were inadmissible on any legal ground, the ruling should be upheld. The plaintiff insists the records were inadmissible upon two grounds: (1) as hearsay, and (2) as privileged communications.
Hospital records, when offered as primary evidence, are hearsay. However, we think they come within one of the well recognized exceptions to the hearsay rule entries made in the regular course of business. *329 Modern business and professional activities have become so complex, involving so many persons, each performing a different function, that an accurate daily record of each transaction is required in order to prevent utter confusion. An inaccurate and false record would be worse than no record at all. Ordinarily, therefore, records made in the usual course of business, made contemporaneously with the occurrences, acts, and events recorded by one authorized to make them and before litigation has arisen, are admitted upon proper identification and authentication. Smith Builders Supply Co. v. Dixon, 246 N.C. 136, 97 S.E.2d 767; Breneman Co. v. Cunningham, 207 N.C. 77, 175 S.E. 829; Insurance Co. v. Seaboard Air Line R. Co., 138 N.C. 42, 50 S.E. 452.
It is a matter of common knowledge, we think, that modern hospitals are staffed by medical, surgical and technological experts who serve as members of a team in the diagnosis and treatment of human ills and injuries. The hospital record of each patient is the daily history made in the course of examination, diagnosis and treatment. The welfare, even the life of the patient, depends upon the accuracy of the record. And the records, as evidence, are more credible perhaps, as to accuracy, than the independent recollection of the physicians, surgeons and technicians who make them. Motive for falsification is lacking. Globe Indemnity Co. v. Reinhart, 152 Md. 439, 137 A. 43; 26 Am.Jur., Hospitals and Asylums, s. 6, p. 590; 75 A.L.R. 1124; 13 N.C.Law Review 326; 24 Missouri Law Review 51; 58 West Virginia Law Review 76; 14 Southern California Law Review 99. On this subject Parker, J., of the United States Court of Appeals for the Fourth Circuit, delivered an illuminating opinion United States v. Wescoat, 49 F.2d 193.
In instances where hospital records are legally admissible in evidence, proper foundation must, of course, be laid for their introduction. The hospital librarian or custodian of the record or other qualified witness must testify to the identity and authenticity of the record and the mode of its preparation, and show that the entries were made at or near to the time of the act, condition or event recorded, that they were made by persons having knowledge of the data set forth, and that they were made ante litem motam. The court should exclude from jury consideration matters in the record which are immaterial and irrelevant to the inquiry, and entries which amount to hearsay on hearsay.
The hospital records offered at the trial are not inadmissible as hearsay. They fall within the exception to the hearsay rule.
The next inquiry is whether or not the hospital records are privileged under the provisions of G.S. § 8-53 and therefore inadmissible.
At common law communications from patients to physicians are not privileged. Such privilege is purely statutory. It is the purpose of such statutes to induce the patient to make full disclosure that proper treatment may be given, to prevent public disclosure of socially stigmatized diseases, and in some instances to protect patients from self-incrimination. In 1828 New York became the first state to recognize the privilege. Now twenty-nine states have statutes dealing with this subject. In 1885 the General Assembly of North Carolina passed an Act providing: "No person duly authorized to practice physic or surgery shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: Provided, that the presiding judge of a superior court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice." Ch. 159, Laws of N. C., 1885; G.S. § 8-53. Except for the proviso, our law is the same as the original New York statute.
The caption or title of our statute according to the original enactment is: *330 "An act making it unlawful for physicians or surgeons to disclose information lawfully communicated to them by their patients." From this it would appear that the statute relates only to information orally communicated to the physician or surgeon by the patient. But the act itself is more comprehensive than the title and extends the privilege to include also any information which the physician or surgeon acquires in attending the patient in a professional character, and which is necessary to enable him to prescribe for or treat the patient. It is the law in this jurisdiction that the caption or title of a statute will be considered in its construction when the meaning of the act is doubtful, but when, as in G.S. § 8-53, the text is clear the title does not control. Town of Blowing Rock v. Gregorie, 243 N.C. 364, 371, 90 S.E.2d 898; In re Chisholm's Will, 176 N.C. 211, 96 S.E. 1031. We have no constitutional provision giving special significance to statute titles as has Pennsylvania for instance. In that state a statute is constitutional only to the extent that its purpose is clearly expressed in the title. A Pennsylvania statute renders privileged the information a physician acquires in attending the patient in a professional capacity and which tends to blacken the character of the patient. But the title of the statute refers only to communications. The Pennsylvania court limits the privilege to oral communications. In re Phillips' Estate, 295 Pa. 349, 145 A. 437 (1929).
The North Carolina statute has been construed as follows: "It is the accepted construction of this statute that it extends, not only to information orally communicated by the patient, but to knowledge obtained by the physician or surgeon through his own observation or examination while attending the patient in a professional capacity, and which was necessary to enable him to prescribe." Smith v. John L. Roper Lumber Co., 147 N.C. 62, 64, 60 S.E. 717, 718, citing cases from other jurisdictions. It is conceded that in the Smith case such construction of the statute was only incidentally necessary to decision on the facts presented. But this construction has been followed by us in many cases directly involving information obtained by physicians and surgeons through examination and treatment. Brittain v. Piedmont Aviation, Inc., 254 N.C. 697, 120 S.E.2d 72; Capps v. Lynch, 253 N.C. 18, 116 S.E.2d 137; Yow v. Pittman, 241 N.C. 69, 84 S.E.2d 297; Creech v. Sovereign Camp Woodmen of the World, 211 N.C. 658, 191 S.E. 840; Sawyer v. Weskett, 201 N.C. 500, 160 S.E. 575; Metropolitan Life Insurance Co. v. Boddie, 194 N.C. 199, 139 S.E. 228.
Most of the privilege statutes in the states having such legislation are similar to ours and were modeled after the original New York statute. However, in seven states the privilege is limited by statute to oral communications, and court decisions generally follow the statutes as written. In some jurisdictions the privilege statutes are strictly construed on the theory that they are in derogation of the common law; in others the courts say that the statutes are remedial and consequently should be liberally construed. 39 Michigan Law Review 1258. Ohio has a statute which limits privilege to communications by the patient, but its courts hold that a communication may be, not only by word of mouth, but also by exhibiting the body or any part thereof to the physician for his opinion, examination or diagnosis. Meier v. Peirano, 76 Ohio App. 9, 62 N.E.2d 920 (1945). North Carolina is a strict constructionist. We are not disposed to extend the privilege beyond the plain sense of the text of the statute, but we are required to give effect to that.
We have not heretofore had occasion to apply the statute in a hospital records case. Frankly, we perceive no difference in the application of the statute between examination and treatment of the patient by a physician or surgeon in a hospital and in the home. The information is no less privileged that it was obtained in a hospital. "It may be laid down as a general rule that the incompetency of a physician *331 to testify concerning information acquired while attending a person in a professional capacity extends to a physician connected with a hospital * * * who offers testimony as to the condition of the patient therein," where his duty in the hospital involved professional attention to the patient. 22 A.L.R., Anno.WitnessHospital Physicians, p. 1217, where many cases from many jurisdictions are cited and reviewed. A fortiori, if the hospital physician is incompetent personally to testify to information obtained, entries made by him or under his direction pertaining to the same matter is inadmissible as evidence. We therefore hold that G.S. § 8-53 applies to the hospital records offered in evidence in this case insofar as they contain entries made by physicians and surgeons, or under their direction, pertaining to communications and information obtained by them in attending the insured professionally, which information was necessary to enable them to prescribe for her. However, any other information contained in the records, if relevant and otherwise competent, is not privileged. The effect of the statute is not extended to include nurses, technicians and others, unless they were assisting, or acting under the direction of, a physician or surgeon. Prudential Life Ins. Co. v. Kozlowski, 226 Wis. 641, 276 N.W. 300 (1937); 14 Southern California Law Review 109.
In North Carolina the statutory privilege is not absolute, but is qualified. A physician or surgeon may not refuse to testify; the privilege is that of the patient. And G.S. § 8-53 provides that notwithstanding a claim of privilege on the part of the patient, the presiding judge of superior court may compel the physician or surgeon to disclose communications and information obtained by him "if in his (the judge's) opinion the same is necessary to a proper administration of justice." In such case the judge shall enter upon the record his finding that the testimony is necessary to a proper administration of justice. Sawyer v. Weskett, supra; State v. Newsome, 195 N.C. 552, 143 S.E. 187. The judge, in the exercise of discretion and by the same authority, may follow the same procedure and admit hospital records in evidence.
It seems to us that the privilege statute, when strictly applied without the exercise of discretion on the part of the judge, is more often unjust than just. We are generally in agreement with the following comment: "Certain it is that the practical employment of the privilege has come to mean little but the suppression of useful truth, * * * Ninety-nine per cent of the litigation in which the privilege is invoked consists of three classes of cases,on policies of life insurance, where * * * misrepresentations of * * * health are involved; * * * for corporal injuries, where the extent of plaintiff's injury is at issue; and testamentary actions, where * * * mental capacity is disputed." Wigmore on Evidence, 3d Ed., Vol. VIII, s. 2380, p. 814. Our Legislature intended the statute to be a shield and not a sword. It was careful to make provision to avoid injustice and suppression of truth by putting it in the power of the trial judge to compel disclosure. Judges should not hesitate to require the disclosure where it appears to them to be necessary in order that the truth be known and justice be done. The Supreme Court cannot exercise such authority and discretion, nor can it repeal or amend the statute by judicial decree. If the spirit and purpose of the law is to be carried out, it must be at the superior court level.
The case at bar vividly illustrates the anomalous situation in which a trial judge may be placed by failure to exercise the authority and discretion given by the statute. There had been tendered, but excluded, hospital records tending strongly to show that the insured, nineteen days after she had applied for insurance and five days after issuance of the policy, was suffering from cirrhosis, chronic pancreatitis, tubular nephrosis and chronic alcoholism. Yet in instructing the jury as to plaintiff's contentions, *332 the judge said: "* * * (T)he plaintiff * * * says and contends that there isn't any evidence here of any falsity at all; that the hospital is supposed to get you well; that that's what you go there for, and that many people have just as good health, have better health after they have made some trips to the hospital and they have found the trouble, than they have ever had before. * * *" Thus the court in view of the evidence admitted and heard by the jury felt compelled to suggest, on behalf of plaintiff, that insured was in good health at the time she applied for insurance, and that her admissions to the hospital (five in four years) were immaterial. Yet evidence was available and at hand that insured was suffering from a complication of serious chronic diseases. What is said here is not intended, and it may not be taken, as any reflection upon or criticism of the eminent, conscientious and learned jurist who tried the case. His integrity is beyond question. He may well have excluded the hospital records because he thought them to be hearsay and for lack of a former ruling by this Court as to the admissibility of hospital records.
On this record and in the absence of a finding by the trial court that, in its opinion, the admission of the hospital records was necessary to a proper administration of justice, we are compelled to hold that their exclusion was not error.
Defendant challenges the following portion of the charge: "* * * (T)he defendant says and contends that where false statements are made that are material statements, that it has a bearing upon the issuance of the policy, if those are made in the application, and that if false statements are made by the insured and the insurance company has no knowledge of it and it develops that they were false, that a policy was issued based upon false statements, that they shouldn't be held liable for it and should not have to make any payments on a condition of that kind."
From this instruction the jury may well have concluded that it had the duty of passing upon the materiality of insured's answers to the questions in the application concerning her health. This is not the case. "In an application for a policy of life insurance, written questions relating to health and written answers thereto are deemed material as a matter of law. Tolbert v. Mutual Benefit Life Insurance Co., 236 N.C. 416, 419, 72 S.E.2d 915. The inquiry for the jury is whether or not insured made the statement and whether or not it was false." Rhinehardt v. North Carolina Mutual Life Insurance Co., 254 N.C. 671, 673, 119 S.E.2d 614, 616. It is true that the questioned instruction was given as a contention, but a misstatement of pertinent law must be held prejudicial even though the misstatement is made in stating the contentions. Harris v. White Construction Co., 240 N.C. 556, 561, 82 S.E. 2d 689.
Plaintiff's evidence was insufficient to establish her right to double indemnity, but she ought not to be deprived of the right to establish that fact if she can. Plaintiff's witness testified: "I was not present when the blow was administered. I don't know whether the blow was inflicted through another person, or in a fight, or what the circumstances were of that, only through what they said, that she fell coming up the steps. Of my own personal knowledge, I do not know how the blow got there." This is all the evidence with respect to insured's injury. This is insufficient to show bodily injury sustained solely through external, violent and accidental means. Furthermore, in the charge the court did not anywhere explain the term "accidental means."
New trial.
HIGGINS, Justice (concurring in the result).
The record requires a new trial. However, I am unable to agree that G.S. § 8-53 makes inadmissible properly authenticated *333 hospital records in so far as they show clinical findings and diagnoses. The majority opinion makes out a better case for admitting the records than it does for excluding them.
The basis for exclusion is laid in a New York statute passed 144 years ago and copied by North Carolina 77 years ago: "No person duly authorized to practice physic or surgery shall be required to disclose any information he may have acquired, etc." (emphasis added) The equipment of a person duly authorized to practice physic consisted of a thermometer, a pair of tooth pullers, and probably a stethoscope. His method of diagnosis consisted of some thumping around over the body and a most detailed inquiry into the patient's complaints. Boneset tea was up-to-date medication. Methods now common to every hospital were as unknown as the back side of the moon.
Even in 1908, when this Court wrote the dictum in Smith v. John L. Roper Lumber Company, 147 N.C. 62, 60 S.E. 717, some of the cities had hospitals operated by a small staff and with meager equipment. The practitioner of physic had become a doctor. His treatment usually took place in the home. His training and instruments were greatly improved. He carried a most interesting case of small bottles, some containing tablets and powders, others liquids of many colors. Still, much detailed inquiry preceded the diagnosis and treatment. If the patient was fortunate enough to get to a hospital, the family physician usually conferred with the staff and passed on what information he had acquired. However, the only record the family doctor kept was a memorandum in a little vest pocket notebook showing the balance due for the treatment.
What a difference today! It is a matter of common knowledge that hospitals are staffed by medical, surgical, technological experts, and research specialists who serve as members of a team in diagnoses and treatment of human ills and injuries. The X-ray, the fluoroscope, the electrocardiograph, and the test tube show the patient's condition. Except in mental cases the examination may begin by this question to the patient: Where is the pain and how long have you had it? Otherwise the machines and the scientific tests tell the story. What they say becomes the hospital record. The diagnosis is the evaluation of the findings.
Should such a record be kept from a court charged with the duty of ascertaining the truth about a subject's physical condition?
The law of evidence is never frozen. Justice Connor had something to say on this subject in 1905 in a case involving the admission of a "train sheet" in evidence. Insurance Co. v. Seaboard Air Line R. Co., 138 N.C. 42, 50 S.E. 452: "The question is of first impression in this state. We have given it careful and anxious consideration, desiring to make no departure from the well-settled principles of the law of evidence or the decisions of this court, at the same time recognizing and keeping in view the duty of the court to make diligent effort to find in those general principles such safe and reasonable adaptability that in the changing conditions of social, commercial, and industrial life there may be no wide divergence in the decisions from the standards by which men are guided and controlled in important practical affairs. The law of evidence, based upon certain more or less well-defined general rules, evolved from experience, has been molded by judicial decision and legislative enactment into a system having for its end and purpose, and believed to be adapted to, the discovery of truth in judicial proceedings. Mr. Greenleaf says: `In the ordinary affairs of life we do not require demonstrative evidence, because it is not consistent with the nature of the subject, and to insist upon it would be unreasonable and absurd. The most that can be affirmed of such things is that there is no reasonable doubt concerning them.' Prof. Thayer says: `The law of evidence is the creature of experience rather than logic.'"
*334 To me, the exclusion of hospital records is as out-of-date as the bustle, asafoetida, and the tomahawk. The statute does not require the exclusion unless a modern hospital is a person duly authorized to practice physic, and then only as to information he may have acquired.
PARKER, J., authorizes me to say that he shares the views here expressed, and joins in this opinion.