STATE OF NORTH CAROLINA v. SAMUEL BRYANT
No. 698SC151

(Filed 18 June 1969)

1. **Evidence § 14— physician-patient privilege — applicability to nurses and technicians**

   The provisions of G.S. 8-53 apply to nurses, technicians and others when they are assisting or acting under the direction of a physician or surgeon.

2. **Evidence § 14— physician-patient privilege — common law rule — G.S. 8-53**

   G.S. 8-53 has amended the common law rule that confidential communications between a patient and a physician and information acquired by the physician while attending or treating the patient were not privileged.

3. **Evidence § 14— admission of confidential communications between physician and patient — discretion of court**

   The trial judge may admit a confidential communication between a physician and patient if in his opinion such is necessary to a proper administration of justice. G.S. 8-53.

4. **Criminal Law § 158— presumption from silent record**

   If the record is silent on a particular point, the action of the trial judge will be presumed correct.

5. **Criminal Law § 167— presumptions and burden of showing error**

   There is a presumption against error, and the burden is on the complaining party to show error.

6. **Evidence § 14— physician-patient privilege — blood alcohol test results — failure of court to find that testimony was necessary to proper administration of justice**

   In this prosecution for manslaughter, the trial court did not err in the admission over defendant's objection of testimony as to the results of a

blood alcohol test administered to defendant at the direction of the attending physician in order to aid him in his diagnosis and treatment of defendant, notwithstanding the trial court made no specific finding that the testimony was necessary to a proper administration of justice, since in the absence of a request for a specific finding the ruling of the trial court was in itself a finding that its admission was necessary to a proper administration of justice.

7. **Constitutional Law §§ 21, 33; Criminal Law §§ 55, 84— blood sample taken from unconscious defendant — admissibility of analysis**

Defendant's constitutional rights were not violated by the taking of a sample of his blood at a physician's direction while defendant was unconscious or by the admission of evidence relating to the analysis of the blood sample.

APPEAL by defendant from *Parker, J.,* October 1968 Session of Superior Court of LENOIR County.

Defendant was tried on four bills of indictment. Three of the bills properly charged him with the felonies of manslaughter, and in the other one he was properly charged with the misdemeanor of driving a motor vehicle while under the influence of intoxicating beverages, and the misdemeanor of reckless driving. One of the bills of indictment charged defendant with manslaughter in connection with the death of Gloria Bryant, another one charged him with manslaughter in connection with the death of Johnnie Scott, and another one charged him with manslaughter in connection with the death of Barbara Bryant.

The evidence for the State tended to show that at about 6:00 P.M. on Saturday, 17 August 1968, the defendant and six others were traveling north on a paved road in Lenoir County in defendant's automobile. The defendant was driving. On a curve the automobile left the road and came to rest about 360 feet away after hitting a tree and a utility pole. The investigating officer found a bottle of whiskey and a can of cool beer in the automobile. The defendant had the odor of alcohol on his breath. One witness testified the defendant was drunk. Dr. D. L. Whitaker, who treated the defendant after he was admitted to the Lenoir Memorial Hospital testified, without objection, that the defendant "was very inebriated" and in a very drunken condition. Upon his arrival at the hospital the defendant was unconscious and had no blood pressure. Dr. Whitaker testified that in order to treat the defendant he ordered a Blood Alcohol Test made on him. Mrs. Catherine Wadsworth, a Laboratory Technician at the hospital, testified that at the request of Dr. Whitaker she took a blood sample from the defendant early on this Saturday evening, while he was unconscious. The actual test for al-

cohol content in the blood was made by David Lutz, the Director of the Clinical Laboratory in Lenoir Memorial Hospital. Mr. Lutz was found by the court to be an Expert Clinical Laboratory Technician. Mr. Lutz testified that the test revealed that the defendant had 0.22% alcohol in his blood. Later the doctor determined that the defendant's low blood pressure had been caused by alcohol.

The following stipulation appears in the record:

"It Is Stipulated by counsel for the State and for the defendant that the two girls (Barbara Bryant and Gloria Bryant) and the woman (Johnny Mae Scott) came to their deaths as the result of the injuries sustained in this collision or wreck."

Defendant offered evidence which in substance tended to show that he was operating his automobile at a speed of about forty-five miles per hour when an automobile being operated by the State's witness Leonard Jones "forced" him off the road and caused him to wreck his car. He had only one swallow of whiskey that morning and was not under the influence of any intoxicating beverages. The two children that were killed were his children.

Upon the defendant's plea of not guilty, trial was by jury, and the verdict was "Guilty of Manslaughter" in all three cases. In its verdict the jury made no mention of the charges of driving under the influence of intoxicating beverages, and reckless driving. The following judgment was entered: "The Judgment of the Court is that the defendant be confined in State Prison not less than five nor more than seven years; all sentences to run concurrently."

The defendant assigned error and appealed to the Court of Appeals.

*Attorney General Robert Morgan, Deputy Attorney General Harrison Lewis, and Assistant Attorney General Henry T. Rosser for the State.*

*Turner and Harrison by Fred W. Harrison for defendant appellant.*

Mallard, C.J.

Defendant contends that the court committed error and violated the provisions of G.S. 8-53 in permitting the witnesses for the State, Mrs. Wadsworth, Mr. Lutz, and Dr. Whitaker to testify over his objection to facts concerning the taking and examining of the defendant's blood for the purpose of determining its alcoholic content. The

blood sample was not taken at the request of the officer, but was taken at the direction of the attending physician in order to aid him in his diagnosis and treatment of the defendant.

G.S. 8-53 reads as follows:

"Communications between physician and patient. — No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: Provided, that the presiding judge of a superior court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice."

[1]    The provisions of this Statute also apply to nurses, technicians, and others when they are assisting or acting under the direction of a physician or surgeon, if the physician or surgeon is at the time acting so as to be within the rule set out therein. *Sims v. Insurance Co.,* 257 N.C. 32, 125 S.E. 2d 326.

The defendant's assignments of error number 1 and 2 are based upon exceptions number 3, 4, 5, and 6. Defendant contends that these assignments of error present the question of whether there was a violation of G.S. 8-53 relating to communication between a physician and patient.

Exception 3 was taken when the court overruled defendant's objection to the following question: "Do you recall, Mrs. Wadsworth, whether or not on the 17th day of August you took some blood from the body of Samuel Bryant, the defendant who is seated next to his attorney?"

It was not prejudicial error for the witness to testify that she took some blood from the body of Samuel Bryant. We do not think that this exception raises the question of a violation of G.S. 8-53.

Defendant's exception number 4 appears when the defendant objected, which objection was overruled by the court, to the following question propounded to Mrs. Wadsworth: "Will you state who instructed you to draw the blood from the defendant's body?" The witness answered "Doctor Whitaker." We do not think that the answer to this question was in any way prejudicial to the defendant.

Defendant's exception number 5 appears after the witness David Lutz had testified to the following: "I made an analysis of the blood sample taken from the body of Samuel Bryant. The analysis

was made on August 19,1968. That was on Monday. The sample that I used was the one drawn by Mrs. Wadsworth. It was marked with her handwriting. The sample showed 0.22% alcohol in the blood." Whereupon the records show, "Defendant moves to strike. Motion denied. Defendant's exception number 5." There was no objection made to any question asked Mr. Lutz. In fact the motion to strike does not specify what defendant moves to strike. After the defendant made this motion to strike the witness Lutz responded without objection or exception, "My scale will only read up to 0.22%; therefore it could have been higher." This latter statement of the witness was made without objection, exception, or motion to strike.

Defendant's exception number 6 appears on top of page 28 and does not state what the exception relates to. It appears in the record after the following questions had been propounded to Dr. Whitaker:

"Q.   What is your opinion?

A.   He was very inebriated.

Q.   You mean he was in a very drunken condition?

A.   Right; correct.

COURT:   Doctor, did I understand you correctly to say that the reason you took this Blood Pressure Test was to determine . . . the reason you took the Blood Alcohol Test was to determine whether or not his extremely low blood pressure was due to the loss of blood or ro (sic) excess of alcohol?

A.   That is correct.

DEFENDANT'S EXCEPTION No. 6."

There was no objection made and exception taken to the questions asked or answers given by the doctor stating his opinion as to the inebriated and drunken condition of the defendant, and the exception that was taken as "Defendant's Exception No. 6" comes after the witness had responded to the court's question. There was no motion made to strike the answer. We do not think that this exception properly raises the question of a violation of G.S. 8-53.

[2]   Under the common law, communications which passed between a patient and a physician in the confidence of the professional relation, and information acquired by the physician while attending or treating the patient, were not privileged or protected from disclosure by the physician. G.S. 8-53 as interpreted by our Supreme Court has the effect of amending this common law rule: *Sims v. Insurance Co., supra.*

In the case of *Insurance Co. v. Boddie,* 194 N.C. 199, 139 S.E. 228, it is said:

> "At common law no privilege existed as to the confidential relations between physician and patient. Wigmore on Evidence, vol. 5, 2 ed., sec. 2380. In its wisdom the General Assembly of this State has seen fit to pass the statute above quoted. We think that in construing same it was incumbent on the presiding judge to find the fact, and this should appear in the record in substance, that in his opinion, the disclosure is necessary to a proper administration of justice. Under the statute, the evidence is incompetent unless in his opinion the same was necessary to a proper administration of justice. The disclosures of a physician as to what takes place between him and his patient has from time immemorial been held by the medical profession as inviolate."

We note that the court said in *Insurance Co. v. Boddie, supra,* the opinion of the trial judge that the disclosure is necessary to a proper administration of justice "should appear in the record in substance." The Statute does not specifically require that the judge's opinion holding that such testimony is necessary to a proper administration of justice should appear in the record in the words of the statute. Of course, it should appear in the record in such a manner as to leave no question or doubt that the judge was controlling the admission of the evidence and that in his opinion such was necessary to a proper administration of justice.

In *Sims v. Insurance Co., supra,* the court said:

> "In North Carolina the statutory privilege is not absolute, but is qualified. A physician or surgeon may not refuse to testify; the privilege is that of the patient. And G.S. 8-53 provides that notwithstanding a claim of privilege on the part of the patient, the presiding judge of superior court may compel the physician or surgeon to disclose communications and information obtained by him 'if in his (the judge's) opinion the same is necessary to a proper administration of justice.' In such case the judge shall enter upon the record his finding that the testimony is necessary to a proper administration of justice. *Sawyer v. Weskett, supra; State v. Newsome,* 195 N.C. 552, 143 S.E. 187. The judge, in the exercise of discretion and by the same authority, may follow the same procedure and admit hospital records in evidence. * * * Our Legislature intended the statute to be a shield and not a sword. It was careful to make provision to avoid injustice and suppression of truth by putting it in the power of the trial

judge to compel disclosure. Judges should not hesitate to require the disclosure where it appears to them to be necessary in order that the truth be known and justice be done. The Supreme Court cannot exercise such authority and discretion, nor can it repeal or amend the statute by judicial decree. If the spirit and purpose of the law is to be carried out, it must be at the superior court level. * * *

On this record and in the absence of a finding by the trial court that, in its opinion, the admission of the hospital records was necessary to a proper administration of justice, we are compelled to hold that their exclusion was not error."

The exclusion of the proffered testimony was held not to be error because the judge made no finding on the record of a necessity for its admission.

[3]    The Statute requires and the decisions of our Supreme Court are to the effect that the trial judge may admit communication between physician and patient if in his opinion such is necessary to a proper administration of justice. In this connection there appears in Stansbury, N. C. Evidence 2d, § 63, p. 138, the following.

"This privilege is unique in that a certain amount of discretion is vested in the superior court judge, who 'may compel such disclosure if in his opinion the same is necessary to a proper administration of justice.' It has been held that a finding of necessity must be made by the trial judge and incorporated in the record in order for this proviso to justify the admission of a communication otherwise privileged, but this is in conflict with other decisions and with the established rule that where the judge has discretionary power and gives no reason for his ruling it will be presumed that the ruling was made in the exercise of discretion."

In State v. Martin, 182 N.C. 846, 109 S.E. 74, the trial judge did not make a specific finding of necessity but stated "that in his discretion he not only permitted but required" the physician to testify when called as a witness for the State. The court in the opinion said "His Honor no doubt did so because in his opinion the testimony of Dr. Mimms was necessary to a proper administration of justice."

In Brittain v. Aviation, Inc., 254 N.C. 697, 120 S.E. 2d 72, the Supreme Court said:

"If it appeared that the court excluded the testimony of Dr. Coffey because he was compelled by statute to do so, we would direct a new trial; but the record, we think, clearly negatives

any idea that the ruling was based on want of authority. The use of the word 'permit' implies a discretion and a refusal because the court did not deem the evidence necessary to a proper administration of justice.

When no reason is assigned by the court for a ruling which may be made as a matter of discretion for the promotion of justice or because of a mistaken view of the law, the presumption on appeal is that the court made the ruling in the exercise of its discretion. *Phelps v. McCotter,* 252 N.C. 66, 112 S.E. 2d 736; *Ogburn v. Sterchi Bros.,* 218 N.C. 507, 11 S.E. 2d 460; *Warren v. Land Bank,* 214 N.C. 206, 198 S.E. 624; *Hogsed v. Pearlman,* 213 N.C. 240, 195 S.E. 789; *Jones v. Insurance Co.,* 210 N.C. 559, 187 S.E. 769. If a party adversely affected by the ruling desires to review it on appeal, he may request the court to let the record show whether the ruling is made as a matter of law or in the exercise of the court's discretion."

[4-6]   In the case before us the defendant had been the driver of an automobile involved in a wreck in which three people had been killed, he had been taken to the hospital unconscious and with the odor of alcohol on him. He had no blood pressure. The doctor who treated him was the one on duty at the hospital and was not his regular physician. The doctor ordered a Blood Alcohol Test made. Defendant objected to the admission of the results thereof and on appeal for the first time claims that such was a privileged communication under the provisions of G.S. 8-53. The objection was overruled. No request was made to the trial court to permit the record to show on what basis the ruling was made. The defendant's objection was all inclusive. The court's ruling was such as to permit the evidence to be admitted. If the record is silent upon a particular point, the action of the trial judge will be presumed correct. *State v. Dew,* 240 N.C. 595, 83 S.E. 2d 482. "The presumption is that the judgment is valid, and the facts necessary to sustain it are presumed to exist." *Jones v. Fowler,* 161 N.C. 354, 77 S.E. 415. There is a presumption against error, and the burden is on the complaining party to show error. *London v. London,* 271 N.C. 568, 157 S.E. 2d 90.

[6]   When the trial judge overruled the objections in this case, under these circumstances, we are of the opinion and so hold that such constituted judicial action on his part and that there can be no doubt that he did so because in his opinion the testimony was necessary to a proper administration of justice. It must be assumed that the judge was aware of the statute when he made the ruling, and that under these circumstances the very act of ruling, in the absence of a re-

quest for a specific finding, was in itself a finding that its admission was necessary to a proper administration of justice. From the standpoint of the witness, after the trial judge had overruled the objection to the question, the witness was required to answer. By the act of overruling the objection the court, in effect, said to the defendant your objection is not sustained on any lawful grounds which included the law as set forth in G.S. 8-53. Under the circumstances of this case we are of the opinion and so hold that no violation of the rule of privileged communication as set forth in G.S. 8-53 has been shown.

[7] We are of the opinion and so hold that neither the taking of a sample of defendant's blood nor the admission of evidence relating to the analysis of the blood sample are in violation of the Constitution of the State of North Carolina or the Constitution of the United States. *State v. Cash,* 219 N.C. 818, 15 S.E. 2d 277; *Branch v. State,* 269 N.C. 642, 153 S.E. 2d 343; *Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908; *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581; *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149.

The defendant contends that the court committed error in its charge to the jury, both as to the presumption arising from the percent of blood alcohol and as to the possible verdicts that it could return. After a careful examination of the entire charge, when viewed as a whole, we are of the opinion and so hold that no prejudicial error has been made to appear.

It follows therefore that the court did not commit error when it failed to grant defendant's motion to set the verdict aside. We are of the opinion and so hold that the defendant has had a fair trial free from prejudicial error.

No error.

BRITT and PARKER, JJ., concur.